JOHANNA (or HANNA) CROWE, Appellee, v. MERCHANTS LIFE & CASUALTY COMPANY, Appellant.

INSURANCE:   Policy—Construction—Ambiguity.   A clause in a life insurance policy which is ambiguous, in that insanity (1) might not, under a given state of facts, release the insurer from liability, or (2) might, under the same state of facts, very materially reduce the insurer's liability, will be given that construction which is most favorable to the insured.

Headnote 1:   32 C. J. p. 1155; 37 C. J. pp. 408, 1152, 1155.

*Appeal from Allamakee District Court.*—W. J. SPRINGER, Judge.

JUNE 21, 1926.

Suit to recover on an insurance policy.   The district court directed a verdict in favor of plaintiff, and defendant appeals. —*Affirmed.*

*D. J. Murphy* and *G. B. Richter,* for appellant.

*W. S. Hart* and *A. E. Sheridan,* for appellee.

ALBERT, J.—One John J. Crowe, the husband of appellee, acquired a policy of insurance in the appellant company in June, 1917.   About April 3, 1919, he contracted a sickness which continued until his death, on August 30, 1920.   Suit was brought on the policy issued to him by appellant.   Appellant seeks to avoid or limit its liability by reason of the following provision in the policy:

"In the event of any claim arising under this policy (irrespective of its cause) due directly or indirectly, wholly or in part, to * * * insanity * * * the company shall not be liable

unless the disability resulting from any of the herein causes, is contracted and begins after this policy has been maintained in continuous force for ninety days; then, in all cases, benefits shall be paid solely under illness benefits as provided under Parts J and K of this policy, and only for a period not exceeding the first forty days of the disability, anything to the contrary herein notwithstanding, or for more than one claim in any one policy year.''

The evidence in the case on behalf of appellee tended to show that the deceased was taken sick about the latter part of March, 1919, with a severe pain in his side, and ''from day to day he got worse.'' A doctor was consulted on April 4th, and, at various times that summer, another doctor was called into consultation. On May 18, 1919, he was taken to LaCrosse, Wisconsin, to see two doctors there, who examined him. He complained of a pain in his side and trouble in his stomach. He stayed there two or three days for treatment, and then returned home. He took the medicine prescribed by the LaCrosse doctors, and the local doctors were called in again. On July 7th, he was taken through the Mayo Clinic at Rochester, where his case was diagnosed as an infection. From Rochester he was again taken to LaCrosse, where he was treated by Doctors Evans and Bannen and some specialists from St. Louis. From there he was taken to his home, and he used the medicine received at Rochester. In September, he was again taken to LaCrosse, and from there to Milwaukee, where he was under the care of Dr. Wynn for a month. He was taken home for about a week, and then taken to Prairie du Chien, where he was under the care of Dr. Pinkerton for five days, and from there back to Milwaukee, where he stayed until December 31, 1919. He was then taken home, and on the 6th of January was taken to Dubuque to St. Joseph's Sanitarium, where he stayed until the 22d of June, when he was admitted to the State Hospital at Independence. Appellee says she first noticed impairment of her husband's mental condition late in the fall of 1919.

Appellant introduced no testimony, but offered that of Dr. Bassler, the local physician of the deceased, and sought to show by him that he was called to see the deceased on or about August 17, 1919; that he observed his mental condition at that time, and that the deceased was suffering from melancholia; that he was

very much depressed, and that he never recovered thereafter from the melancholy condition; that melancholia is a species or form of insanity. This testimony was objected to on the ground that it was violative of the privileged communication statute, to wit, Section 11263 of the Code of 1924. To avoid this section of the statute, appellant introduced a letter written by Crowe on the 20th of April, 1919, to the insurance company, in which he stated that he was sick, and referred the company to Doctor Bassler. He said, "You can write to him, and he will give you the facts." After the introduction of this letter, the above testimony was offered from the witness Bassler, and rejected by the court.

It further appears that, on or about June 17, 1920, an application was made to the local district court for the appointment of a guardian for the said Crowe, on the ground, among others, that he was insane. On submission of a verified petition, a judge of that court appointed the wife as temporary guardian of the property of Crowe, and fixed her bond at $5,000. Appellant offered this petition and order in evidence, and they were rejected.

It is urged that there was error in the refusal to accept the offered testimony of Dr. Bassler, and also in rejection of the petition and order under which the temporary guardian was appointed. As we view the case thus presented, the court's rulings as to the testimony of Bassler and the guardianship proceedings were wholly immaterial. The controlling question in the case turns on the construction of the above quoted provision of the policy.

It is a fundamental doctrine that, where a policy is ambiguous in its terms, or susceptible of two or more constructions, that construction should be placed on it which is most favorable to the insured. *Kirkpatrick v. Aetna Life Ins. Co.*, 141 Iowa 74; *Foster v. North American Acc. Ins. Co.*, 176 Iowa 399; *Teeple v. Fraternal Bankers' Reserve Soc.*, 179 Iowa 65. We have also said that, if an exception of liability in an accident policy is susceptible of two meanings, that one is to be adopted which is most favorable to the insured. *Robinson v. Hawkeye Com. Men's Assn.*, 186 Iowa 759; *Berry v. United Com. Trav.*, 172 Iowa 429. That this is the uniform rule, see 32 Corpus Juris 1152, at Section 265, and 1 Cooley's Briefs on the Law of Insurance 633.

Where a given construction would result in the forfeiture of the policy, or would result in the defeat thereof, that construction shall be placed upon it which would not result in the forfeiture or defeat of the policy. 1 Cooley's Briefs on the Law of Insurance 636.

Under the record as it stands, the deceased was attacked by this illness in the latter part of March, 1919. The offered testimony of appellant tended to show that, in August, 1919, there was evidence of mental derangement and melancholia. This being the offered testimony, it is apparent that there can be no claim that insanity existed prior to that time. We thus have a case where a man was taken with a fatal illness, and at some time about five months after the original attack, insanity or evidences of insanity became apparent. The question before us is whether, under this set of facts, the aforesaid limitation in the policy releases the company from liability, or whether it is only liable for the first forty days of disability, as provided therein. A reading of the section itself shows that the same is, to say the least, ambiguous. It might be construed to mean, as appellant contends, that its liability would be limited to forty days from the commencement of insanity. On the other hand, it might be construed to mean that, if the original disease which attacked the man was insanity, then liability would be limited to payment for forty days. We are disposed to think, however, that, under the law above referred to, as applied to the facts in this case, the rational construction to be applied to the aforesaid provision in the policy is that the company is not released from liability. The policy, having been written and prepared by the company, is to be construed most strictly against it, under the rules above referred to, and in such a way that the insurance provided for shall not be forfeited or defeated. If any other construction were put upon it, the result would be a rule that, regardless of the disease from which an assured might be suffering, in the event that insanity appeared in his sickness, the company would only be liable for forty days' insurance from the date of the appearance of such insanity. We do not believe that this was the intent of the parties at the time the policy was issued; and, had it been so, the company should have stated it in precise and exact terms, and not in the ambiguous form in which it is stated.

The district court was right in directing a verdict in favor of the claimant.—*Affirmed.*

DE GRAFF, C. J., and EVANS and MORLING, JJ., concur.