GERALD WEST, d/b/a SIOUX CITY MOTOR EXPRESS, appellee, v. HARTFORD FIRE INSURANCE COMPANY, appellant.

No. 49210.

(Reported in 83 N.W. 2d 465)

994

June 4, 1957.

Stilwill & Wilson, of Sioux City, for appellant.

Galvin & Galvin, of Sioux City, for appellee.

LARSON, J.—Pursuant to an arrangement between Robert Haynes, a duly licensed order buyer at the Sioux City Stock Yards, and the firm of A. J. Maurer & Sons, order buyers at the Kansas City Stock Yards, Haynes purchased and sent to the latter certain slaughter-type cattle. The plaintiff, a livestock trucker for hire, held a certain policy of insurance in defendant's company insuring plaintiff for the account of the livestock owners against loss by death of the animals while in transit. He was hired by Haynes to transport these cattle to the A. J. Maurer & Sons firm at the Kansas City Stock Yards. En route three head of cattle perished and this action at law was commenced to recover the value thereof under the terms of the policy.

The issues raised in the court below were (1) was there coverage under the policy, (2) was plaintiff the real party in interest permitting him to bring this action, and (3) did plaintiff prove any proper measure of damages. Jury having been waived, the trial court found for plaintiff. Defendant's motions for a new trial and for judgment notwithstanding the verdict were overruled and defendant appealed.

The defense offered was in the nature of an affirmative defense, i.e., that the policy covered only "shipments * * * consigned for sale" and that the evidence disclosed a prior sale; that the policy provided for payment of loss to "the owner or to the owner and trucker" and not to the trucker alone; and that since there was no proper proof of the required market value of the livestock at Kansas City on that date, there was no liability under the sued-on policy.

I. The first issue involves the court's construction of the phrase "but only when consigned for sale" as used in this policy. The trial court held as a conclusion of law "that 'consigned for sale' in this policy did not mean who the actual consignor was or who the actual consignee was, as the shipping arrangements so far as they are known to an insured-carrier under a transit policy is controlling in determining who is the consignor and who is the consignee. That the term 'consigned' by definition in mercantile law implies that the goods are shipped 'for sale' and

that, therefore, when this plaintiff received word that the cattle shipment in question was being consigned from Bob Haynes to A. J. Maurer and Sons, he had a legal right to presume that they were consigned for sale."

The provisions of the policy insure "Gerald West * * * called 'the trucker', for the account of the owners, hereinafter called 'owner' or 'owners', of the livestock transported * * * against loss by reason of death and crippling caused solely by hazards of transportation * * * while in transit in * * * trucks * * * operated by the trucker * * * *but only when consigned for sale* unless otherwise provided by indorsement attached hereto, from points of loading to Kansas City Stock Yards, Kansas City, Missouri. * * * Livestock covered under this policy is insured for amounts not exceeding the actual cash market value at destination named herein. * * * Privilege is hereby granted the trucker * * * to procure insurance on shipments moving from the market or stockyards named herein to other specific destinations." (Emphasis supplied.)

This policy further provided: "The commission firm or market agency to whom shipment is *consigned for sale* shall conclusively be the lawful agent of the owner with full power and authority to act for the owner in all matters pertaining to this insurance." (Emphasis supplied.)

There were no indorsements on the policy.

It is defendant's contention the evidence disclosed that the cattle were already sold prior to the transportation and that therefore the provisions of this policy would not cover the loss incurred. It further contends plaintiff cannot recover unless he shows the cattle were consigned "for sale."

Acting as a jury, the trial court found "the evidence of the plaintiff supports the allegations of his petition * * *", one of which was "that said cattle were being shipped to A. J. Maurer and Sons by Robert E. Haynes of Sioux City, Iowa, for resale." If there is substantial evidence of that fact, this determination will not be disturbed by us.

While we believe there is substantial evidence to support the trial court's conclusion that the title to the cattle remained in Haynes, the consignor, until they were eventually sold by

the consignee in Kansas City, and that the subsequent acts disclose the true intention of the parties, yet we are not in accord with its conclusion that the designation of consignor and consignee in such a consignment of cattle is itself conclusive of a consignment for sale so as to incur absolute liability under this policy. While it may be somewhat of a burden on the insured to be sure of the relation of parties engaging him, yet the policy in very clear terms is conditional and provides for indorsements in case of goods shipped not for sale. The coverage contemplated was for a consignment to a commission firm or other marketing agency at the Kansas City Stock Yards for sale. "Consignments" to such may be presumed to be for sale, but if in fact it were shown to be otherwise, the policy does not expressly or inferentially insure the shipment.

The nub of this controversy appears to revolve around the legal significance of the phrase "consigned for sale" in the insurance contract. Such a policy is a voluntary commercial contract, 44 C. J. S., Insurance, section 223, page 928, and the usual rules of construction apply. The use here of the technical term "consigned" is significant. Under the mercantile law it has a well-established meaning. Black's Law Dictionary, Fourth Edition, page 380, defines "consignee" as "one to whom a consignment is made; the person to whom goods are shipped for sale"; "consignor" as "one who sends or makes a consignment; a shipper of goods"; and "consign"—"to deliver goods to a carrier to be transmitted to a designated factor or agent; * * * to send or transmit goods to a merchant, factor, or agent for sale; to deposit with another to be sold, disposed of, or called for." See Edwards v. Baldwin Piano Co., 79 Fla. 143, 83 So. 915, 918.

It has been said that in a sense all goods shipped to another are consigned to him, but in the mercantile sense "consigned" implies agency and carries an implication that the title to the property is not in the consignee. 15 C. J. S., Consign, page 988. Also see 35 C. J. S., Factors, section 1, page 390; Cooper v. American Fruit Growers, Inc., 137 Cal. App. 494, 30 P.2d 558, and citations; Northern Electrical Mfg. Co. v. J. C. Wagner Co., 108 Wis. 584, 84 N.W. 894.

It has also been held there is no magic in the words "consignment" or "agency" which can change the real char-

acter of a transaction from a sale to a consignment or agency contract. See L. R. A. 1917B, page 649. In Pam agt. Vilmar, 54 How. Pr. Rep. (N. Y.) 235, the court held that where parties to a contract have treated it as a consignment for sale, and not an absolute sale, it will be so construed. It is pointed out the course of dealings between parties over a considerable period of time is often the most satisfactory mode of indicating their intention and the character of the relation existing between them. Evidence of the past relationship of consignor and consignee is therefore material.

What, then, was the intent and purpose of the use of the terms "but only when consigned for sale" and "shipment is consigned for sale" in this contract? What proof is required to establish a valid claim under the policy?

It is true, as a general rule, that all doubts in construing insurance policies are resolved against the insurance company which used the language in preparing the policy. Struble v. Square Deal Ins. Co., 237 Iowa 1155, 24 N.W.2d 441, and cases cited therein. It is also true generally that the language of exceptions and conditions must be clear, and the party offering the instrument is responsible for all doubts in the language. Robinson v. Hawkeye Commercial Men's Assn., 186 Iowa 759, 171 N.W. 118; Crowe v. Merchants Life & Casualty Co., 202 Iowa 43, 209 N.W. 406.

On the other hand some import must be given the language used and, if possible, effect should be given to it. Here we find not only the words "consigned" but also the words "for sale" clearly set forth in the policy. Being in the nature of a condition or exception, a strict construction is required. To deny recovery under the policy unless the insured first proved that the animals were shipped for sale would, it seems to us, be giving an unreasonable construction of the condition or requirement to be placed on the insured. The predetermination of title to property so consigned is sometimes most difficult, if not impossible. In the absence of clear and explicit language expressing that intention, we will not give it that construction. In other words, by the use of the word "consigned" in the contract, we think it was intended that the insured who accepts goods from a consignor to a consignee may presume the con-

signment is for sale under the usual meaning of the words in mercantile law. Such shipment when accepted by the insured transporter, without knowledge to the contrary, is substantial evidence of a relationship of the parties such as would sustain a recovery under the policy. Inferentially the consignment is from an owner to an agent or factor for sale.

Such inferential relationship would, however, not amount to a conclusive presumption, but under the express provisions of the contract may be rebutted by a showing that the consignment was not for sale. It seems likely it was intended that if the facts proven disclosed a prior sale, it would be sufficient to defeat recovery under the policy. This position seems to be the one taken by counsel for defendant in this action, who sought affirmatively to prove a sale prior to the transportation of the cattle. We turn, then, to the proof offered.

The evidence, without dispute, discloses that Robert Haynes arranged with the plaintiff to transport the four loads of cattle involved. The truck billing of the Sioux City Stock Yards signed by Haynes (plaintiff's Exhibit 1) lists as "Consignor—Bob Haynes" and as "Consignee—A. J. Maurer & Sons, Care of Stock Yards, Kansas City, Mo.", and the truck bill of lading made up by plaintiff's bookkeeper (plaintiff's Exhibit 6) dated July 5, 1954, discloses the cattle "Consigned to A. J. Maurer and Son, Kansas City, Mo. (stockyards); Shipper— Bob Haines, Sioux City, Iowa." There is no evidence plaintiff was aware of any relationship other than that imported by these disclosures. These facts as to party relationship, we believe, do establish a prima-facie case for plaintiff.

There was, however, a definite dispute in the record as to the actual ownership of the cattle at the time of shipment. It is defendant's contention that the evidence discloses the cattle were purchased by Haynes as an agent for Maurer-Neuer Corporation, a packing house in Kansas City, via an order sent through A. J. Maurer & Sons to Robert Haynes; that, as such, the cattle were already the property of the packing house and were not in fact consigned for sale. Defendant's Exhibit 5, being a copy of an order of purchase made by Haynes July 5, 1954, listing 86 head of cattle "Bought for Maurer-Neuer Corp.", tends to confirm the prior sale.

On the other hand there was evidence tending to refute that conclusion. On occasions Haynes said, as an order buyer, "you always more or less have an order before you ship them unless you are shipping on a strictly speculative deal." He said he received an order for two loads of cattle from A. J. Maurer & Sons who wanted them for slaughter, but as is the practice, when he found a favorable market and the desirable stock, he shipped four loads to them. They did not approve this action.

When the cattle arrived in Kansas City, Maurer & Sons refused to accept them and also turned down the sight draft drawn on them by Haynes covering the purchase price plus his commission. They immediately sent Haynes a wire which suggested "placing [the cattle] on market tomorrow; if otherwise please advise immediately." (Plaintiff's Exhibit 2.) Exhibit 3 later disclosed A. J. Maurer & Sons collected $974.21 from the trucking firm for the dead and damaged cattle and sent their check to Haynes saying, "* * * which is the amount received * * * for *your account* in reduction of loss on cattle *which we handled for your account.*" (Emphasis supplied.)

It further appears A. J. Maurer & Sons collected their usual commission on the sale of these cattle to the eventual buyer, Maurer-Neuer Corporation, a packing house in which they had an interest.

An issue of fact as to the true ownership of the cattle at the time of the shipment of the stock is evident. See 46 Am. Jur., Sales, section 19, page 214; Sioux Remedy Co. v. Lindgren, 27 S. D. 123, 130 N.W. 49.

We conclude the plaintiff's evidence as to the consignment herein established a rebuttable presumption that the cattle were consigned for sale. We also conclude the evidence as to the real character of the transaction between Haynes and A. J. Maurer & Sons or the Maurer-Neuer Corporation was not conclusive. There was sufficient evidence to sustain the factual determination by the court that title was not established in the consignee or the Maurer-Neuer Corporation prior to the transportation. Substantial evidence supports the trial court's determination that the sale of this shipment was intended to and did take place at Kansas City rather than at Sioux City, even though a

sale to a known buyer was contemplated when the shipment was made. 46 Am. Jur., Sales, section 20, page 215; Holbrook v. Wight, 24 Wendell (N. Y.) 169, 35 Am. Dec. 607.

II. We find no merit in defendant's contention that plaintiff was not the proper party to prosecute this action. The record discloses first of all that plaintiff's firm paid A. J. Maurer & Sons the loss claimed, which was in turn sent to Haynes who they acknowledge was the title owner of the deceased animals.

We are also clear that as a party to the contract plaintiff was permitted to bring the action in his own name. Rule No. 2 of the Iowa Rules of Civil Procedure provides: "Every action must be prosecuted in the name of the real party in interest. But an executor * * * or a party with whom or in whose name a contract is made for another's benefit * * * may sue in his own name without joining the party for whose benefit the action is prosecuted." See Iowa Rules of Civil Procedure by Cook, Volume 1, page 30; 67 C. J. S., Parties, section 10a, page 909; Bowers v. Bailey, 237 Iowa 295, 299, 21 N.W.2d 773, 776.

In Linnemann v. Kirchner, 189 Iowa 336, 178 N.W. 899, we held one in whose name a contract is made for the benefit of another or the beneficiary of such contract may be a party plaintiff to enforce the contract. Plaintiff here occupies that position by the terms of the insurance policy as well as being the real party in interest, having paid the loss to the owner of the destroyed and damaged livestock.

III. We find no merit in defendant's contention that no proper proof as required under the contract was produced to show the market quotations of like kind and quality of cattle on the day the livestock would have arrived at Kansas City. It is true plaintiff's evidence left much to be desired, but there is undisputed testimony as to the average market quotations of such cattle as were purchased in Sioux City July 5, 1954. There was also undisputed testimony that at the time of these transactions the value of such cattle in Kansas City was 75¢ per cwt. more than in Sioux City. This was considered by the trial court as sufficient to meet the contract requirements as to value of loss determination, and we agree. The lost cattle weighed 3150 pounds. The value per cwt. at Sioux City was $23.81, plus 75¢

or $24.56 per cwt. at Kansas City. The court properly allowed damages of $773.64, being the value of the three cattle measured by the Kansas City market July 6, 1954.

Having found no reversible error, we must affirm the judgment of the trial court.—Affirmed.

All JUSTICES concur.