FARM SERVICE COMPANY, appellant, v. MARTIN H. TOBIN, appellee.

No. 50875.

(Reported in 121 N.W.2d 128)

APRIL 9, 1963.

John D. Randall, of Cedar Rapids, and Kopf & Christiansen, of Davenport, for appellant.

Hall & McCarthy, of Davenport, for appellee.

MOORE, J.—On February 27, 1954, plaintiff's service station at Mount Joy was completely destroyed by fire after a gasoline pump was pulled over. Plaintiff claims the fire was caused by defendant's negligence. The petition alleges the necessary elements of a case for tort. In count one it alleges five specifications of negligence. Count two relies on the doctrine of res ipsa loquitur. Following trial to the court judgment was entered for defendant. Plaintiff appeals. We affirm the decision.

Plaintiff asserts and argues the trial court erred: (1) in failing to invoke the doctrine of res ipsa loquitur and (2) in rendering a judgment which had no substantial support in the evidence.

Plaintiff's first witness was defendant, Tobin. He testified that around noon on February 27, 1954, he drove southwest on Highway 61; made an east turn into plaintiff's station; drove between the two pumps and the building as he had done on many occasions over several years; stopped with his car headed southwest in the same location where he usually stopped to get gas and left his car from the left front door; that up to that time he was sure his car had not touched any part of the

1330

pumps or the station property. The two pumps were close together and in line with each other. The driveway was of crushed rock or gravel but that day was covered with slush and snow. He stopped his car about a foot and a half or two feet from the south pump and about 3 to 4 feet west of the station building; that as he alighted George Stichter, the regular station attendant, came out and asked if he should put gas in defendant's car; he advised Stichter he did not want gas but was there to pay his bill. He went into the station, met a new bookkeeper; visited, paid his bill; left the building and re-entered his car through the door from which he had alighted. He drove straight ahead for about 6 feet when he heard a noise which sounded like Stichter had dropped a bucket or something. When about 10 to 12 feet past the pump he felt his car drag or slow down; that he proceeded 35 to 50 feet beyond the pump, looked back through the rearview mirror, saw a flame, got out and sometime later with Stichter discovered part of the pump hose was fastened to his rear bumper. That was the first time he knew the hose was hooked on his bumper. There was no way between the time he started to drive from the building after paying his bill until he stopped and looked back in the rearview mirror that he could have seen what happened along the right side of his car. "Q. And from the time you got into your car after you came out of the Farm Service office and until you were clear past the tanks did any part of your car touch any part of the tanks or the Farm Service Building? A. No."

Plaintiff's second witness, Earl Pugh, its station manager, testified he was in Muscatine at the time of the fire. He identified Exhibits 2 through 15 as photographs of plaintiff's station and the surroundings after the fire. He testified:

"Q. I believe you said the pumps were resting on concrete, is that right? A. Yes. Q. A concrete slab? A. Yes. Q. But there was no safety island as we ordinarily see in a filling station, was there? A. Well, you could see in the picture where it had been gradually filled up. Q. Would there ordinarily have been a safety island that was filled up by gravel thrown up there? A. Yes, as it worked down through the ground. Q. I

want to direct your attention to the kind of hose that was on that, on those pumps on this day in question, February 27, 1954, immediately before this accident; do you know what kind of hose was connected from the pumps so as to draw the gasoline from the pumps and put it in the automobile tanks? A. No, I don't know what kind it was. Q. You don't know what kind of a hose; was it the regular type hose on there or do you know whether a hose had recently been placed on there? A. I know another hose had been put on the gas tank. It was the same type of hose only it was longer. It was not a retractable hose. I know that they had it made. It was called 14 feet long. The pumps were 5 feet or about 5 and a half feet high. The hose hung down then—the part that came down on the ground —it would just come down in an S and down on the ground. It would leave some of the hose on the ground, how much I would not be able to say. That had been on there just a few days. Prior to that time there had been a shorter hose on there."

Plaintiff's third witness, Carl Goerig, an insurance adjuster, testified only regarding damages caused by the fire.

After making Exhibits 2 through 15 part of the record plaintiff then rested. Defendant offered no evidence. Following the submission the trial court prepared and filed his findings and conclusions.

The court found he should consider each specification of negligence alleged by plaintiff and that the doctrine of res ipsa loquitur was not available to plaintiff under the record made. The court found: (1) Plaintiff failed to prove negligence as specified (2) plaintiff failed to negative contributory negligence on its part, and (3) the evidence affirmatively established contributory negligence.

In his findings the trial court stated:

"On the score of contributory negligence, even if the court ruled improperly in admitting testimony as to the installation of the new and longer hose (it was brought out on cross-examination over objection of improper cross-examination), the plaintiff failed to meet the burden of proving freedom from contributory negligence. Even if defendant in driving out had

turned too abruptly he would not have caught a proper hose properly installed if the cement island had not been so narrow or had become so poorly elevated. This fact affirmatively appears from an examination of Exhibits 2 and 3. But, as stated, even though contributory negligence does not appear affirmatively, certainly the plaintiff failed to meet the burden of negativing it. That the hose became attached to the rear bumper is apparent and the plaintiff offered no testimony concerning the hose."

■ The burden was, of course, upon plaintiff to plead and prove its freedom from contributory negligence. In Paulsen v. Haker, 250 Iowa 532, 545, 95 N.W.2d 47, 55, we said: "The burden being upon plaintiffs [executors of decedent's estate] to establish her freedom from negligence contributing to the injuries suffered, in the absence of any evidence whatever upon the question of what she did or did not do, it must be held as a matter of law their case has failed in this respect." See also Plumb v. Minneapolis & St. L. Ry. Co., 249 Iowa 1187, 91 N.W. 2d 380; Hutchinson v. Minneapolis & St. L. Ry. Co., 252 Iowa 228, 106 N.W.2d 419.

■ This case is not reviewable de novo here but only on the errors assigned. Rule 334, Rules of Civil Procedure; Ruble v. Carr, 244 Iowa 990, 993, 59 N.W.2d 228, 230, and citations; Jones v. O'Bryon, 254 Iowa 31, 37, 116 N.W.2d 461, 465, and citations. The court's findings of fact have the effect of a jury verdict if there is substantial evidence to support them. Beardsley v. Hobbs, 239 Iowa 1332, 34 N.W.2d 916; Dahl v. Allen, 243 Iowa 808, 53 N.W.2d 759; In re Estate of Gollobit, 231 Iowa 1074, 1075, 3 N.W.2d 191, 192; Roth v. Headlee, 238 Iowa 1340, 1342, 29 N.W.2d 923, 924; Wunschel v. McKinney, 251 Iowa 881, 103 N.W.2d 81.

In In re Estate of Gollobit, supra, this court said: "Since the jury was waived, the judgment of the district court has the effect of a verdict if there is substantial competent evidence to support it."

In Roth v. Headlee, supra, we said: "The action was tried at law without a jury. It is not reviewable here de novo

but only upon the errors assigned. * * * The decision below on the facts has the force and effect of a jury verdict."

Plaintiff's evidence establishes affirmatively that unless some precaution were taken the new 14-foot hose would be hanging from the pump in an S and down on the ground level of the station driveway. With this showing of knowledge by plaintiff nothing is shown as to what, if anything, plaintiff did to avoid having the hose protrude out into the path of vehicles using its driveway. Why the attendant was not called to describe the position of the hose when defendant drove in apparently must remain a mystery. We hold the trial court was well within the record in his ruling that plaintiff failed to meet its burden of negativing contributory negligence. Therefore plaintiff was not entitled to recover. Plaintiff's second assigned error is without merit. Our holding is decisive of this controversy. We find it unnecessary to determine plaintiff's first assigned error. The court's finding on the issue of plaintiff's freedom from contributory negligence is fatal to its right of recovery under either count.—Affirmed.

All JUSTICES concur.