GIESE (Harland), by Guardian *ad litem,* Plaintiff and Respondent v. KARSTEDT and another, Defendants: IOWA NATIONAL MUTUAL INSURANCE COMPANY, Defendant and Appellant.

GIESE (Marvin) and another, Plaintiffs, v. SAME, Defendants: SAME, Defendant and Appellant.

*April 11—May 10, 1966.*

632

For the appellant there was a brief by *Everson, Whitney, O'Melia, Everson & Brehm* of Green Bay, and oral argument by *Philip R. Brehm.*

For the respondent there was a brief by *Lehner, Lehner & Behling* of Oconto Falls, and oral argument by *Howard N. Lehner.*

WILKIE, J.   The issues presented on this appeal are whether the following findings by the trial court are against the great weight and clear preponderance of the evidence: [1]

*First,* that Frederick Karstedt did not furnish his automobile to his father for regular use prior to and on April 2, 1961.

*Second,* that Frederick Karstedt was not a member of his father's household on April 2, 1961.

According to the policy terms, appellant Iowa National will succeed on this appeal if either question is answered in the affirmative.

Although respondents do not argue this point, it should be noted at the onset that the exclusion clause in the policy is not ambiguous.[2]   Therefore, this is not an occasion to invoke the rule of strict construction against the insurance company in regard to the policy provisions.

### *Regular Use.*

The policy in question excludes coverage in the event that Frederick Karstedt's car was furnished for the regular use of his father, the named insured in the Iowa National insurance policy.

Before Frederick left on his service hitch he told his father to "Keep the gas tank filled so moisture wouldn't get in it" and to "occasionally run it on the road." The father also understood these to be his instructions.  It cannot be said that a direction to "occasionally run" a

---

[1] *Boehck Construction Equipment Corp. v. O'Brien* (1966), 29 Wis. (2d) 649, 139 N. W. (2d) 650; *Huber Glass Co. v. First Nat. Bank* (1965), 29 Wis. (2d) 106, 138 N. W. (2d) 157.

[2] *Lontkowski v. Ignarski* (1959), 6 Wis. (2d) 561, 95 N. W. (2d) 230.

car is equivalent to permission to use the car regularly. Nor did Theodore Karstedt carry out his son's wishes in such a way as to regularly use the car. Between February 23 and April 2, 1961, he started the automobile at most once a week and drove it on either one or two occasions. The trial court found that:

"The use of the car was very sporadic and definitely restricted." [3]

Our conclusion is that the trial court's finding that there was no regular use of Frederick's car by the father must be affirmed.

### *Household.*

In *Raymond v. Century Indemnity Co.*,[4] a case not cited in the trial court's opinion, a twenty-two-year-old, who had previously lived with his mother all his life, entered the army. Whether or not there was insurance coverage on the particular facts depended on the underlying question of whether the son was still in his mother's household. It was held that nothing had happened to destroy his status as a member of the household. Although there is authority to the contrary,[5] this appears to be the general rule in most jurisdictions.[6] *Raymond*

[3] Citing *Le Mense v. Thiel* (1964), 25 Wis. (2d) 364, 130 N. W. (2d) 875.

[4] (1953), 264 Wis. 429, 59 N. W. (2d) 459.

[5] *Shapiro v. Republic Indemnity Co. of America* (1959), 52 Cal. (2d) 437, 341 Pac. (2d) 289.

[6] *Central Manufacturers' Mut. Ins. Co. v. Friedman* (1948), 213 Ark. 9, 209 S. W. (2d) 102; *Senn v. State Farm Mut. Automobile Ins. Co.* (Ky. 1956), 287 S. W. (2d) 439; *Mississippi Benefit Asso. v. Majure* (1947), 201 Miss. 183, 29 So. (2d) 110; *Allstate Ins. Co. v. Jahrling* (1962), 16 App. Div. (2d) 501, 229 N. Y. Supp. (2d) 707; *American Universal Ins. Co. v. Thompson* (1963), 62 Wash. (2d) 595, 384 Pac. (2d) 367; *Detroit Automobile Inter-Insurance Exchange v. Feys* (D. C. Cal. 1962), 205 Fed. Supp. 42; *American Service Mut. Ins. Co. v. Pugh* (8th Cir. 1959), 271 Fed. (2d) 174.

was cited in the very recent case of *Doern v. Crawford,*[7] where this court, after considering it and two other "household" cases,[8] said:

"The holdings of these three cases demonstrate that the controlling test of whether persons are members of a household at a particular time is not solely whether they are then residing together under one roof. Living together under one roof is a factor to be considered and must have occurred at some time. When not occurring at the time in question, the absence from the family roof must be of a temporary nature with intent on the part of the absent person to return thereto." [9]

and

"Whether the absence from the household is of long or short duration is immaterial except as it may give rise to an inference of intent to remain away permanently or only temporarily." [10]

Aside from the time spent in school and service, Frederick had always lived in Cecil. He had never established a permanent residence elsewhere. While away from Cecil he left unneeded personal belongings in his parents' home. After enlisting in the armed forces, he continued banking in Cecil, used a Cecil address for mailing and automobile-licensing purposes, and had a portion of his pay sent there. True, he apparently voted in the national elections while at school in Milwaukee in 1960. But after that date he returned to Cecil. In short, these and other factors demonstrate, with no inferences to the contrary, under the holding of *Raymond* and the test promulgated in *Doern,* that young Karstedt had not

---

[7] Ante, p. 206, 140 N. W. (2d) 193.

[8] *National Farmers Union Property & Casualty Co. v. Maca* (1965), 26 Wis. (2d) 399, 132 N. W. (2d) 517, and *Lontkowski v. Ignarski, supra,* footnote 2.

[9] *Doern v. Crawford, supra,* footnote 7, at page 213.

[10] *Doern v. Crawford, supra,* footnote 7, at page 214.

completely severed the "household" umbilical cord as of April 2, 1961.

The trial court's finding that:

". . . his [Frederick's] voluntary enlistment and entry into the service took him out of the household and he was no longer a member of it."

is against the great weight and clear preponderance and is in error.

That Frederick should be deemed to remain as a member of his father's household and that coverage should not be extended under the father's insurance policy where he is involved in an accident while driving his son's automobile (not specifically covered by the father's policy) is perfectly consistent with the basic purpose of provisions excluding from coverage liability arising out of the use of other automobiles owned, hired, or regularly used by a member of the insured's household.[11]

*By the Court.*—Judgments reversed.

[11] As stated by Mr. Justice FAIRCHILD in *National Farmers Union Property & Casualty Co. v. Maca, supra,* footnote 8, at page 405, the purpose of the "drive-other-car" provisions like the one in the Iowa National policy here "is to avoid coverage of several vehicles owned by members of the same family, who, by their close intimacy, might be expected to use each other's cars without hindrance and with or without permission."