WILLIAM O. VERSCHOOR and WILLIAM E. VERSCHOOR, JR., d/b/a WOOD BROTHERS, appellees, v. ABE MILLER, defendant; GIDEON DOBLER, d/b/a LIVESTOCK SALES COMPANY et al., intervenors-appellants.

No. 52106.

June 14, 1966.

Pizey, Sears & DeWitt and Darrell M. Hanna, both of Sioux City, for appellants.

172

Sifford, Wadden & Davis, of Sioux City, for appellees.

MOORE, J.—On October 26, 1964, plaintiffs filed an action at law against defendant Abe Miller claiming $87,652.07 for drafts drawn on them for purchase of cattle. Aided by a writ of attachment plaintiffs immediately garnished Frank E. Scott Commission Company. The commission company answered and later under a stipulation of the parties paid into court $18,204.13 being the proceeds from 183 cattle sold for Abe Miller prior to 3:30 p.m., October 26, 1964. On January 4, 1965, intervenors filed separate but almost identical petitions of intervention claiming the garnished proceeds were from cattle Miller obtained from them to which they retained title. Upon trial to the court the petitions of intervention were dismissed and judgment entered against intervenors. They have appealed. Only the controversy between plaintiffs and intervenors for the $18,204.13 is involved in this appeal.

Defendant Miller, a dealer in livestock for 35 years, had for about a year prior to Wednesday, October 21, 1964, purchased cattle consigned to Kist Livestock Auction Company, Incorporated, of Mandan, North Dakota, under an arrangement by which he was given possession of the stock and the following Thursday or Friday sent a check to Kist for the same by the trucker who had done the hauling.

On the above date Miller personally bought at the Kist Auction consignments totaling 106 cattle for $11,344.46. Although purporting to sell only for cash and knowing the cattle would be trucked to market, Kist without receiving payment issued an invoice showing Miller as owner of these cattle. At Miller's direction 81 head were loaded Wednesday night to be trucked to Scott in Sioux City, Iowa. The other 25 were moved out the next morning and also shipped to Scott as part of a load with cattle bought by Miller the next day from Dobler Company in Jamestown, North Dakota. Miller testified he sent a check to Kist by a trucker. It was not received by Kist. Kist on the day of the auction paid the consignors for their cattle. Kist was not paid except on December 22, 1964, Miller made a partial payment of $3388.40.

On Thursday, October 22, 1964, Miller bought 165 cattle at Dobler's Livestock Auction at Jamestown and issued three checks for the total purchase price of $14,379.44. Invoices were issued showing the cattle were sold to Miller. Dobler was aware they were to be sent to market. The next morning 52 head were shipped by rail consigned to Scott. The remaining 113 together with the 25 from Kist were shipped Friday morning by Miller to Scott by trucks.

Miller stopped payment on the checks after garnishment. Dobler received only a partial payment of $3388.40 which Miller made December 22, 1964.

Miller began shipping cattle to Scott Commission Company for sale in September or October 1, 1964. The following is a list of cattle received from Miller by Scott after October 11, 1964.

| October 12, 1964 — 82 head | October 20, 1964 — 195 head |
| October 14, 1964 — 117 head | October 21, 1964 — 183 head |
| October 15, 1964 — 319 head | October 24, 1964 — 219 head |
| October 19, 1964 — 100 head | October 25, 1964 — 52 head |

No cattle were received from Miller after October 25. Scott on receipt of a shipment from Miller put the cattle in pens and weighed, graded and sorted them for better sale. After a sale Scott's remittance was made to Miller by head count, not by any particular cattle shipment.

Scott did not buy or sell on Saturdays or Sundays and seldom sold cattle from a shipment on the day it was received.

The testimony of intervenors' witness Charles Chapman, a partner in the Scott Commission Company, is conflicting and confusing to some extent regarding the identity of the 183 cattle sold by Scott at Sioux City prior to 3:30 p.m. on October 26, 1964. He testified regarding the dates and number of cattle received from Miller from October 11 through 25, the method used for sorting and head count and was unable to state from which shipment a particular critter came after the sorting had been completed. The 183 sold on October 26 consisted of a sale of 106 and another of 77 head. On cross-examination Chapman stated 106 head came in on October 21 and those specific cattle were sold on the 26th and also 77 head arrived at Scott's yard on October 21 and all sold on the 26th except eight calves.

Chapman further testified a few head were sold on the 26th after the garnishment, on the evening of October 26 Scott still had approximately 260 head which had been consigned by Miller, 44 head, including some of the cattle received on the 25th by rail, were sold on the 27th and about four days later 219 head were "returned home" to Miller.

Defendant Miller's answer to the garnishment states Scott is not indebted to him but to the owners of the cattle and that Gideon Dobler, doing business as Dobler Sales Company of Jamestown, North Dakota, owned the cattle sold on October 26. Miller as intervenors' witness related the details of his purchases from Kist and Dobler, the manner of shipping the cattle to Scott, his stopping payment on the Dobler checks after garnishment and his disposition of the 219 head which were returned to him and he sold at Eldora, Iowa. He testified he recognized most of the 219 as light cattle purchased from Harvey Livestock Auction Company, at Harvey, North Dakota, October 20. On cross-examination he stated some light cattle had also been bought at Kist and Doblers.

The petition of each intervenor pleaded ownership of the cattle obtained by Miller at the respective auctions and the garnished proceeds were from the sale of said cattle. Plaintiffs denied these and other allegations of the petitions of intervention. On the issues thus joined intervenors attempted to prove ownership of the cattle sold on October 26 and therefore a right to the garnished funds.

After making extensive findings of fact the trial court held intervenors failed to meet the burden to prove their claim the money reached by garnishment was proceeds of a sale of Kist or Dobler cattle. The trial court further held the question of whether title passed to Miller at or after purchase need not be decided in view of said holding against intervenors.

The intervenors assert the judgment dismissing their petitions of intervention is contrary to the facts and applicable law, no title passed to Miller, pursuant to the doctrine of commingling they are entitled to the funds, the court should have impressed a trust on the garnished funds in proportion to the interest of each

intervenor and plaintiff acquired no greater rights than those of defendant Miller.

Plaintiffs argue the trial court correctly held intervenors had the burden of proving the allegations of their petitions and the court's finding they failed to meet their burden is supported by the record. Plaintiffs assert failure of intervenors to prove at least some of the cattle sold came from their auctions renders consideration of other issues unnecessary. Stated another way, plaintiffs point out there is substantial evidence the cattle sold on October 26 arrived at Scott's yard not later than October 21.

I. Intervenors concede these proceedings are at law and were so tried. O'Melia v. Hoffmeyer, 119 Iowa 444, 93 N.W. 497, so holds.

II. Ordinarily the burden of proof follows the pleading, that is, he who pleads and relies upon the affirmative of an issue must carry the burden of proving it. This proposition is well established. Authorities need not be cited to support it. Rule 344(f)5, Rules of Civil Procedure.

Intervenors here have the burden of proving the allegations of their respective petitions. They have the burden of showing the funds sought belong to them. City National Bank v. Crahan, 135 Iowa 230, 239, 112 N.W. 793, 796; Remington Typewriter Co. v. McArthur, 145 Iowa 57, 123 N.W. 760; Hubbard Milling Co. v. Kempf, 231 Iowa 593, 1 N.W.2d 698; Hopping v. Hopping, 233 Iowa 993, 1004, 1005, 10 N.W.2d 87, 93, 152 A. L. R. 436, and citations.

III. The trial court's findings of fact in this law action are binding upon us if supported by substantial evidence. Citation of authorities is unnecessary. Rule 344(f)1, Rules of Civil Procedure. This case is not reviewable here de novo. The trial court's decision on the facts has the effect of a jury verdict. It was for the trial court to determine the credibility of the witnesses and the weight to be given their testimony. The court's decision on the facts must stand unless intervenors were entitled to the garnished funds as a matter of law or, stated in another way, unless intervenors would have been entitled to a directed verdict if there had been a jury trial. Harlan etc. Assn. v. Schroeder Elev. Co., 253 Iowa 345, 348, 112 N.W.2d 320, 322;

Weaver Construction Co. v. Farmers Natl. Bk., 253 Iowa 1280, 1284, 115 N.W.2d 804, 806, and citations.

The trial court's findings include a determination the 106 head sold on October 26 were received by Scott on October 21 and were not cattle purchased by Miller from Kist or Dobler. Included in the court's findings is "the claim the money reached by the garnishment is the proceeds of the sale of Dobler or Kist cattle cannot be substantiated to the extent the court would be warranted in making such a finding."

■ There is substantial evidence to support these findings of the trial court and the conclusion intervenors failed to prove the material allegations of their petitions such as to entitle them to the money held under garnishment. Under the rule heretofore noted these findings are binding upon this court.

IV. We agree with the trial court's ruling that in the absence of a showing some of the Kist or Dobler cattle were included in the sale involved here the question of title becomes immaterial. Without establishing some right in the garnished funds intervenors' request a trust be impressed need not be considered.

■ V. The trial court found no claim of tortious confusion of cattle had been asserted. The record supports this finding and therefore that issue is being raised for the first time on appeal. This court has held so many times a question not presented to and not passed upon by the trial court cannot be raised or reviewed on appeal that citation of decisions is unnecessary. See, however, Weimer v. Lueck, 234 Iowa 1231, 1240, 15 N.W.2d 291, 295; Bryan v. Iowa State Highway Commission, 251 Iowa 1093, 1096, 104 N.W.2d 562, 563; Mundy v. Olds, 254 Iowa 1095, 1100, 120 N.W.2d 469, 472; Associates Discount Corp. v. Held, 255 Iowa 680, 684, 123 N.W.2d 869, 871. We note, however, the record disproves any confusion of Kist or Dobler cattle with those sold on October 26.

■ VI. Intervenors' last assigned error is without merit. Of course plaintiffs' rights are measured by Miller's rights to the garnished funds. What Cheer Sav. Bk. v. Mowery, 149 Iowa 114, 117, 128 N.W. 7, 8; Scurry v. Quaker Oats Co., 201 Iowa 1171, 1172, 208 N.W. 860, 861.

In Briley v. Madrid Improvement Co., 255 Iowa 388, 390, 122 N.W.2d 824, 825, we say: "As a general rule, an attachment or garnishment is effective only to the extent of the debtor's interest in the property attached, and the lien does not displace prior equities or rights. The right first acquired is, as a rule, superior."

Here Miller was entitled to the funds held by Scott at time of garnishment. Plaintiffs acquired by garnishment rights superior to any claim of intervenors thereto.

The order dismissing the petitions of intervention is affirmed.—Affirmed.

All JUSTICES concur except JUSTICE RAWLINGS who takes no part.