VERN S. GOODSELL et al., appellees, v. STATE AUTOMOBILE AND CASUALTY UNDERWRITERS, appellant.

No. 52398.

(Reported in 153 N.W.2d 458)

136

Gene V. Kellenberger and Keyes, Crawford & Bradley, all of Cedar Rapids, for appellant.

Englebrecht & Ackerman, of Waverly, for appellees.

LEGRAND, J.—On September 21, 1964, Sandra Goodsell, one of the plaintiffs, was involved in an automobile accident in Detroit, Michigan. The accident resulted in damage to Miss Goodsell's Volkswagen automobile in the amount of $900.12 and caused injury to her for which she incurred medical and hospital expense of $62.

Some time prior to this accident the plaintiff, Vern S. Goodsell, father of Sandra Goodsell, had purchased a family automobile insurance policy from defendant. This policy was in full force and effect on the date of the accident, and it listed the Volkswagen as one of the cars covered by its terms, even though the policy was issued to Vern S. Goodsell and the Volkswagen was owned by Sandra Goodsell. The defendant admits in his argument that the Volkswagen is an "owned car" as defined in the policy.

Plaintiffs made claim for the amount of the repairs to the car and for reimbursement of the medical and hospital expense above referred to. Defendants denied coverage and refused payment of plaintiffs' claim. This suit was then started to compel payment by defendant.

After trial to the court, judgment was entered for plain-

tiffs in the amount of $962.12, from which defendant appeals. Defendant assigns four errors for our consideration. Since all raise but a single issue, we will discuss and dispose of them as one. Defendant strenuously urges that Sandra Goodsell's operation of the Volkswagen was not covered by the policy unless she was, at the time of the accident, a resident of Vern S. Goodsell's household. Defendant alleges that the trial court erred in its findings of fact and its conclusions of law which resulted in the determination that she was such a resident and that she was therefore entitled to recover under the terms of the policy. If the trial court properly held that Sandra Goodsell was a resident of her father's household, then the judgment must be affirmed; if she was not such a resident at that time, then it must be reversed.

This is a law action and we are limited to considering the errors assigned on appeal. Rule 334, Rules of Civil Procedure; Farm Service Co. v. Tobin, 254 Iowa 1328, 1332, 121 N.W.2d 128, 130, and citations; Phoenix v. Stevens, 256 Iowa 432, 435, 127 N.W.2d 640, 642. We might say, however, that certain definitions in the policy, particularly those in Parts II and III which deal with coverage for collision loss and for medical payment benefits, are ambiguous and might justify extension of coverage to Sandra Goodsell regardless of her status in the Vern S. Goodsell household. Under Part II defendant agrees to pay for medical, hospital and other expenses incurred for injuries sustained by any person "while occupying the owned automobile, while being used by the named assured, by any resident of the same household ·or by any other person with the permission of the named insured." Under Part III dealing with collision coverage the policy states that "insured means (a) with respect to the owned automobile (1) the named insured and (2) any person * * * using or having custody of said automobile with the permission of the named insured." Since the claims at issue arise under Parts II and III of the policy and since the record shows that Sandra Goodsell was operating the car with the consent of her father, it is difficult to see why these specific policy provisions do not extend protection to Sandra Goodsell. However, since the case was

neither tried nor decided on this theory, we disregard it in our determination of the matter.

The facts giving rise to this litigation are: Sandra Goodsell, a single girl, approximately 20 years of age, resided with her mother and father in Denver, Iowa. In March of 1963 she purchased a Volkswagen automobile, although title was put in her father's name because he had supplied the purchase price and desired to retain title until his daughter had repaid the amount advanced. Title was transferred to the name of Sandra Goodsell in May of 1964. In July of 1964 Sandra Goodsell began a training course with Northwest Airlines in Minneapolis, Minnesota. After attending school there for some time, she was sent to Detroit, Michigan, for additional training. The Volkswagen was left with Mr. Goodsell in Denver, Iowa, until about the middle of August, when Sandra Goodsell drove it to Detroit, where she kept it until the accident one month later.

The policy of insurance designated Vern S. Goodsell as the only named assured. The Volkswagen, however, was described therein as an "owned automobile". It remained so described even after title was transferred from Vern S. Goodsell to Sandra Goodsell. Defendant concedes that the Volkswagen is an owned automobile within the terms of the policy.

Defendant's appeal is based solely upon the proposition that there can be no recovery unless Sandra Goodsell was a resident in the household of Vern S. Goodsell on September 21, 1964. It is, of course, admitted that Sandra Goodsell was attending a job training course in Detroit, Michigan, when the accident occurred. Did this prevent her from being a resident of her father's household within the policy provisions?

Evidence was introduced to show that when she went to Detroit, her future plans were uncertain. A fair interpretation of the evidence sustains the conclusion neither she nor the company knew if she would be employed when her training was completed. She did not know if she would desire such employment. She testified that "she had not made up her mind." She did not know if the company would accept her as an employee. If she were employed, she did not know where she would be assigned for duty. The most that can be said when

Sandra Goodsell went to Detroit is that she was hopeful of securing employment with the company upon completion of her training and was willing to locate where the company assigned her, but the events which would decide this had not yet occurred when she was involved in the accident.

Defendant claims Sandra Goodsell ceased to be a resident in her father's household for the purposes of coverage under the policy when she went to Detroit. Thereafter, according to defendant, she operated her automobile without insurance protection under the policy issued to her father.

We are unable to agree with defendant and find there was ample evidence in the record to justify the conclusion reached by the trial court. The narrow and dogmatic definition of residence for which appellant contends ignores the long history of litigation over the meaning of this word. "Resident" has many meanings and has been defined in many ways. The term may mean different things for different purposes. It has been interpreted, under various statutes and in various factual situations, in cases involving taxation; venue; poor relief; voting rights; attachment proceedings; school attendance; military service; unemployment compensation benefits; jurisdiction for divorce purposes; and presumption of death resulting from unexplained absence. This list is illustrative, but by no means exhaustive, of the confusion and uncertainty over the term. No purpose would be served here in detailing the facts surrounding these various decisions. For a further discussion see 4 Iowa Law Bulletin 3; 37 Words and Phrases, Permanent Edition, 317-451; In re Seidel, 204 Minn. 357, 283 N.W. 742, 743; State v. Savre, 129 Iowa 122, 124, 105 N.W. 387, 3 L.R.A., N.S., 455, 113 Am. St. Rep. 452; Harris v. Harris, 205 Iowa 108, 112, 215 N.W. 661, 663.

In view of the many meanings which the word "resident" may have and in view of the various interpretations which have been placed upon the term both by this court and by courts of other jurisdictions, it would be unreasonable to expect plaintiffs to understand precisely which meaning was intended by defendant. Certainly it is susceptible of the mean-

ing for which the plaintiffs now contend, although that may not be what defendant had in mind.

■■■ In these circumstances the established rules for the interpretation of insurance contracts become important. One of these rules is that the court should ascertain what the insured, as a reasonable person, understood the policy to mean, not what the insurer actually intended. Umbarger v. State Farm Mutual Automobile Insurance Co., 218 Iowa 203, 206, 254 N.W. 87, 88. We have said on several occasions a contract of insurance should not be construed through the magnifying eye of the technical lawyer but rather from the standpoint of what an ordinary man would believe it to mean. Murphy v. New York Life Insurance Co., 219 Iowa 609, 613, 258 N.W. 749, 751; Aeroline Flight Service, Inc. v. Insurance Company of North America, 257 Iowa 409, 417, 133 N.W.2d 80, 85. As applied to this case the trial court was justified in concluding that Vern S. Goodsell, as a reasonable person, did not understand his policy would extend no protection to an automobile which was covered by its terms while that automobile was being driven by his daughter in Detroit, Michigan.

■■ Another rule of construction in insurance cases requires doubt or ambiguity to be construed strictly against the insurer and liberally in favor of the insured. This rule is peculiarly applicable here. Struble v. Square Deal Insurance Co., 237 Iowa 1155, 1159, 24 N.W.2d 441, 442, and citations; West v. Hartford Fire Insurance Co., 248 Iowa 993, 998, 83 N.W.2d 465, 468; Rogers v. Maryland Casualty Co., 252 Iowa 1096, 1099, 109 N.W.2d 435, 437, and citations. Under these authorities we cannot limit the meaning of the word resident as used in this policy as strictly as defendant would like. We hold that there is substantial evidence in the record justifying the trial court's conclusion that Sandra Goodsell was a resident of her father's household within the terms of the policy at the time in question.

We have not overlooked the testimony of Sandra Goodsell upon which defendant so strongly relies. It is set out in full as follows:

"Q. Would it be fair to say, Sandra, that when you moved

to Detroit or went to Detroit it was with the intention of staying there permanently subject to changing your mind if the airline job didn't turn out? In other words, maybe I can rephrase it a little, did you go to Detroit with the intention of going there and staying there with the intention if things didn't work out you would come back? A. I went there with the intention of working out my three months probationary period to see if I did like it. They stipulate when they hire you that this is not a definite job. You are not hired forever and ever. That they have the right to get rid of you in three months or sooner if you don't work out.

"Q. And I suppose by the same token they could assign you at a Northwest Terminal other than Detroit? A. Yes.

"Q. This may be a fine distinction, but you went to Detroit with the idea of staying there and living there permanently unless you decided it wasn't going to work out or something else happened that changed your mind, that's true, isn't it? A. Yes.

"Q. You understand what I mean by that? A. Yes.

"Q. If you don't understand, say so? A. I do."

Defendant contends this testimony conclusively bars recovery by plaintiffs. Defendant contends further it conclusively shows that Sandra Goodsell changed her residence when she went to Detroit and had no intention of returning to her father's home in Denver, Iowa. The trial court placed far less importance on this testimony than does defendant. When related to Sandra Goodsell's testimony as a whole, this evidence is consistent with the finding that she went to Detroit willing to take a job if one were offered, ready to change her residence if that were necessary, but with no idea as to what the ultimate outcome of her training would be.

In its reply brief and argument defendant raises the question of Sandra Goodsell's failure to comply with the Financial Responsibility Act of the State of Iowa. We do not see how this failure could in any event be material to a determination of this case. However, we find that this issue was not before the trial court, and was not raised on this appeal until the filing of the reply brief and argument. Under these circumstances it cannot be considered here. Verschoor v. Miller, 259 Iowa 170, 143 N.W.2d 385, 389, and citations.

We find that there is substantial evidence to support the findings of fact made by the trial court. Since this is a law action, these findings are therefore binding upon us. Rule 344(f)(1), Rules of Civil Procedure.

We find no error and the judgment is, therefore,—Affirmed.

All JUSTICES concur except MASON, J., and GARFIELD, C. J., who dissent.

MASON, J.—I dissent. Defendant's appeal presents the issue whether Sandra Fae Goodsell was an insured under an automobile insurance policy issued by defendant to her father.

The policy defines insured as including the named insured and any resident of the same household. The majority holds there is substantial evidence in the record justifying the trial court's conclusion that Sandra was a resident of her father's household within the terms of the policy at the time in question. I disagree.

The question of who are members of the same household in cases involving insurance coverage has been before the Wisconsin court on at least four occasions that I find.

In Raymond v. Century Indemnity Co., 264 Wis. 429, 431, 59 N.W.2d 459, 460, the provision for interpretation was "with the permission of an adult member of such assured's household." The issue was whether the person operating an automobile insured by defendant company at time of accident was driving it "with the permission of an adult member of such assured's household." The policy had been issued to a Mrs. Hasseler whose 22-year-old son was in the armed forces stationed at Camp McCoy. It was he who had granted permission to drive the insured vehicle to the person operating it at the time of the accident. The son had lived with his mother at Green Bay prior to entering the army. The court held the son's absence in the army did not destroy his status as an adult member of his mother's household.

The trial court was reversed for excluding facts bearing upon the son's right under the policy of the named insured to permit the driver to use the car and having that right relate back to his mother.

In Lontkowski v. Ignarski, 6 Wis.2d 561, 564, 565, 95 N.W. 2d 230, 232, the policy before the court excluded coverage with respect to any car "furnished for regular use to the named insured or a member of his household."

The court said:

" 'Household' is defined by Webster as 'those who dwell under the same roof and constitute a family.' That definition corresponds with the common and approved usage of the term and is supported by judicial authority. 'Persons who dwell together as a family constitute a household.' Arthur v. Morgan, 1884, 112 U.S. 495, 499, 5 S. Ct. 241, 243, 28 L. Ed. 825."

The trial court's finding that the driver of the insured vehicle was a member of the owner's household was affirmed.

The third case, National Farmers Union Property & Cas. Co. v. Maca, 26 Wis.2d 399, 403, 407, 132 N.W.2d 517, 519, 521, 522, involved a liability policy covering farm accidents subject to the exclusion that coverage was not extended to bodily injury to the named insured and his spouse and "the relatives of either * * * if such * * * relative is a resident of the household of the insured * * *." The policyholder's 32-year-old son was injured while operating a corn picker on his father's farm approximately five months after he came to live with his parents. He had accepted a job which he could have retained on a permanent basis, but claimed he was only living with his parents until he could find a better job.

Plaintiff insurance company claimed the son was a resident of the father's household, and, being his son, would therefore have the protection of being an insured under the policy but that any liability to him for bodily injury was excluded. The son contended he was not "resident," because he did not intend to remain permanently, arguing that the word "resident" must be construed with the connotation of "domicile," and cannot apply to one who does not have the present intention to remain. The court said: "We have so construed the word 'resident' where used in certain statutes. The word, however, 'is an elastic term which may refer to a temporary sojourner as well as to one possessing a legal domicile.' "

In affirming the trial court's granting of a summary judg-

ment on the basis that the son was a member of the father's household as a matter of law within the wording of the policy, the court said:

"We think that one is not a resident of the household or member of the family if, even though he has no other place of abode, he comes under the family roof for a definite short period or for an indefinite period under such circumstances that an early termination is highly probable. If, however, the circumstances of his stay are otherwise consistent with a family or household relationship, and his stay is likely to be of substantial duration, the fact that he attempts to find employment, gaining which he would live elsewhere, would not, in our opinion, prevent his being a resident of the household or a member of the family."

The remaining case referred to, Doern v. Crawford, 30 Wis.2d 206, 140 N.W.2d 193, 196, involved a policy issued to a Mr. Paulson which extended coverage to non-owned automobiles when operated by the named insured or a relative residing in the same household. Paulson's wife was also a "named insured" under the policy definitions. For some time before the accident Paulson, his wife and her son by a prior marriage resided together in the same home. Six days before the accident Paulson instituted divorce proceedings and removed from the home. At the time of the accident the stepson was driving a "loaner" automobile.

The insurance company denied coverage and moved for summary judgment dismissing the complaint as to it. Its appeal from the court's order denying the motion presents the question whether Paulson, the policyholder, on the date of the accident was residing in the same household with his wife and stepson.

In affirming the action of the trial court in denying the insurance company's motion for summary judgment the court said, after referring to the above cases:

"The holdings of these three cases demonstrate that the controlling test of whether persons are members of a household at a particular time is not solely whether they are then residing together under one roof. Living together under one roof

is a factor to be considered and must have occurred at some time. *When not occurring at the time in question, the absence from the family roof must be of a temporary nature with intent on the part of the absent person to return thereto.* There is a close analogy between the concepts of household and domicile because intent of the person involved plays such a significant part. The one material difference between the two is that a domicile once acquired is not lost when a person leaves it, even though intending never to return, until he establishes a domicile elsewhere. We determine that this is not true with respect to a household, and, therefore, physical absence coupled with intent not to return is sufficient to sever the absent person's membership in the household. Every person has a domicile but not every person is a member of a household.

"Whether the absence from the household is of long or short duration is immaterial except as it may give rise to an inference of intent to remain away permanently or only temporarily * * *." (Emphasis supplied.)

This controlling test is repeated with approval in Giese v. Karstedt, 30 Wis.2d 630, 141 N.W.2d 886, 889.

From the foregoing pronouncements, it logically follows that the question is not whether Sandra intended to establish a domicile in Detroit, rather whether it was her intent to return to Denver after she left for training in Detroit.

I think this is where the trial court erred in its conclusions of law.

The trial court determined Sandra was a resident of her father's household based upon his fact finding that "Sandra Fae Goodsell did not have at the specific time that she went to Detroit, Michigan, an intention to reside there permanently and *with no present intention of moving back to Denver, Iowa, or to any other place * * *.*" (Emphasis supplied.)

The trial court seemed to be under the impression that his finding that "she was there only on a probationary basis and on a training basis and would be transferred somewhere in North America that Northwest Airlines decided upon in the event her training was successful * * * " vitiates any idea that Sandra intended to reside permanently in Detroit. It does negate the idea that Detroit may have been her domicile at the

time of the accident, however, it does not negate, rather tends to substantiate plaintiff's failure to meet the crucial standard, i.e., she would not be coming back to Denver.

I fail to find substantial evidence that would support a finding that Sandra intended to return to Denver. In fact, I believe the record establishes that she was going to take up a permanent residence elsewhere but did not know where. It depended upon whether the company was satisfied with her work and where, if anyplace, it wished to send her.

I would reverse.

GARFIELD, C. J., joins in this dissent.