LONTKOWSKI, Special Administrator, Appellant, v. IGNARSKI and another, Respondents.

*February 5—March 3, 1959.*

562

For the appellant there was a brief by *Lontkowski & Lontkowski* and *Kaftan, Kaftan & Kaftan,* all of Green Bay, and oral argument by *J. Robert Kaftan* and *Edward C. Lontkowski.*

For the respondents there was a brief by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *John C. Whitney.*

HALLOWS, J. The ultimate question presented by this appeal is whether the exclusion provision of the Dairyland

policy, quoted in the statement of facts, operated to exclude coverage of Donald's automobile at the time of the accident.

Appellant contends that the question was settled in favor of coverage by the jury's verdict, approved by the court, that Donald did not furnish his automobile for regular use to Joseph. The argument is that the expression "furnished for regular use" applies to all of the situations described in the exclusion, and that unless the automobile has been furnished for regular use to the named insured, coverage of the named insured is not excluded.

This interpretation of the exclusion provision misconceives its meaning as set forth in express and unequivocal terms. The exclusion applies to three situations, each of which is different than and separate from the others, to wit: (1) Ownership of the automobile by the named insured or a member of his household; (2) hiring of the automobile by same; and (3) furnishing of the car for regular use to same. Structurally the sentence might be set up thus:

"This insuring agreement does not apply: (1) To any automobile
    owned by,
. (2) hired as part of a frequent use of hired automobiles by,
    *or*
(3) furnished for regular use to
the named insured or a member of his household."

The disjunctive "or," which we have italicized, shows that regular use is not a necessary element of all three excluded situations but only of the third one. Appellant's interpretation virtually disregards that word and also the words "owned by." Other things being equal, a construction which gives effect to every word is preferable to one which does not. *Dore v. Glenn Rock Mineral Spring Co.* (1911), 147 Wis. 158, 161, 132 N. W. 906.

The foregoing interpretation of the policy provision is in accord with the views expressed in several reported cases.

*Campbell v. Aetna Casualty & Surety Co.* (4th Cir. 1954), 211 Fed. (2d) 732; *Aler v. Travelers Indemnity Co.* (D. C. 1950), 92 Fed. Supp. 620; *Leteff v. Maryland Casualty Co.* (La. 1956), 91 So. (2d) 123. To the contrary is a two-to-one decision in *Travelers Indemnity Co. v. Pray* (6th Cir. 1953), 204 Fed. (2d) 821. On the general subject see Anno. 173 A. L. R. 901.

It remains to be determined whether the automobile which Joseph Ignarski was driving at the time of the accident was excluded from coverage because it was an "automobile owned by . . . the named insured or a member of his household." It was not owned by the named insured, Joseph Ignarski, but by his brother, Donald. Was Donald a member of Joseph's household? The trial court answered this question in the affirmative.

"Household" is defined by Webster as "those who dwell under the same roof and compose a family." That definition corresponds with the common and approved usage of the term and is supported by judicial authority. "Persons who dwell together as a family constitute a 'household.' " *Arthur v. Morgan* (1884), 112 U. S. 495, 499, 5 Sup. Ct. 241, 243, 28 L. Ed. 825.

On the evidence in the present record the trial court could properly find that the young men, Donald and Joseph, were dwelling with their parents as a family under one roof, and hence were members of the same household. The facts that each brother was a little more than twenty-one years old, had a job, and paid something for room and board, either in money or work, did not require a finding that they were not living in the house as members of the same family. That a "household" may include persons other than parents and minor children is shown by the words of the policy, "a member of his household other than a private chauffeur or domestic servant."

Since the brothers were members of the same household, the trial court did not err in finding that Donald was "a member of his [Joseph's] household." The term "his household" may include persons other than those to whom the named insured bears the relationship of *pater familias* or head of the house. "His" household does not connote ownership or supremacy but means the household of which he is a member.

The determination that Donald was a member of Joseph's household finds strong support in the following decisions: *Farm Bureau Mut. Automobile Ins. Co. v. Violano* (2d Cir. 1941), 123 Fed. (2d) 692, 695; *Cartier v. Lumbermen's Mut. Casualty Co.* (1931), 84 N. H. 526, 153 Atl. 6; *Tomlyanovich v. Tomlyanovich* (1953), 239 Minn. 250, 58 N. W. (2d) 855, 50 A. L. R. (2d) 108. The case last cited contains an extensive collection of authorities.

It is nevertheless argued that the exclusion clause of the policy is obscure and ambiguous and should therefore be construed most strongly against the insurance company. *Kelly v. Fidelity Mut. Life Ins. Co.* (1919), 169 Wis. 274, 172 N. W. 152, *Heimbecher v. Johnson* (1951), 258 Wis. 200, 45 N. W. (2d) 610, and *Charette v. Prudential Ins. Co.* (1930), 202 Wis. 470, 232 N. W. 848, are cited.

This principle is limited by another, also well established, that the plain terms of a contract of insurance are not to be rewritten under the guise of strict construction against the company so as to bind the insurer to a risk which it was unwilling to cover and for which it was not paid. *City Bank of Portage v. Bankers L. M. Casualty Co.* (1931), 206 Wis. 1, 4, 238 N. W. 819; *Bell v. American Ins. Co.* (1921), 173 Wis. 533, 536, 181 N. W. 733. As said by the trial judge in his well-considered opinion, "It is not for the court to rewrite contracts of insurance for the parties, nor to emasculate by strained construction the intent of the parties there-

to, so long as the contract provisions do not violate the laws of the land or public policy."

It is sometimes hard to tell which of these guides to construction applies. In the instant case the exclusion provision of the policy is sufficiently clear in its application to the facts found by the trial court, so that this court would not be warranted in giving such provision the interpretation which is urged upon us by the appellant.

*By the Court.*—Judgment affirmed.