STOFFEL, Respondent, v. AMERICAN FAMILY LIFE
INSURANCE COMPANY, Appellant.

*No. 95.   Argued January 7, 1969.—Decided February 7, 1969.*
(Also reported in 164 N. W. 2d 484.)

566

For the appellant there was a brief by *Colwin & Buslee* of Fond du Lac, and oral argument by *Raymond R. Colwin*.

For the respondent there was a brief by *Weinke & Weinke* of Fond du Lac, and oral argument by *Steven A. Weinke*.

ROBERT W. HANSEN, J.    The insurance policy on which this action is based provides for a double indemnity payment in the event of accidental death.  The provision on which recovery is sought reads:

"The American Family Life Insurance Company . . . Hereby agrees, subject to the definitions, conditions and limitations hereinafter provided, that if during the period of coverage hereinafter specified the death of the Insured shall occur as the direct result of bodily injury and independent of all other causes, effected solely through external, violent and accidental means, as evidenced by a visible contusion or wound on the exterior of the body (except in the case of drowning or internal injuries revealed by an autopsy), and the date of occurrence of such injury is not more than one hundred twenty days prior to date of death,

"The company will pay . . . the Accidental Death Benefit stated above in addition to the other proceeds of said policy . . . ."

The plaintiff-beneficiary contends that the result of the lifting of the wagon constituted an accident, the sole cause of death and covered by the policy. The defendant-insurance company contends that the lifting was not an accident, not the sole cause of death and therefore not covered by the accidental death benefit provisions of the policy.

*Was the incident an accident?*

Was the internal injury caused by the lifting of the wagon an "accident?" Is a death resulting from such internal injuries "accidental" under the terms of this policy?

It is the position of the insurance company that both the means and the result must be unexpected or unanticipated before an "accident" occurs. Since the insured's attempt to lift the wagon off the tractor wheel was carried out by means or in a way that was intended by the insured, under this view, the injury and death were not the result of an accident at all. Cases from other jurisdictions are cited in support of this position that both the means and result must be unintended and unexpected before an accident can be held to have occurred. Representative of such line of cases, is the one in Massachusetts where the insured sustained injury and died as a result of lifting mortar tubs. The court there denied recovery, holding:

> "The injury which it is contended the insured received was the strangulated hernia first disclosed by the surgical operation and later by the autopsy. Its only cause from external means, so far as appears, was the lifting of the mortar tubs. The evidence did not warrant a finding that this lifting of the tubs either was unintentional or at the time was accompanied by any unexpected occurrence . . . Here the lifting itself was not attended by accident although the consequences to the insured were unforeseen. The case is illustrative of the distinction

to be observed between accidental result and accidental cause." [1]

Plaintiff-beneficiary concedes that in jurisdictions following this line of reasoning, it is not enough that the result alone was unexpected to make the incident an accident. However, he relies upon cases from jurisdictions holding that where injury or death is the unusual, unexpected or unforeseen result of an intentional act, such injury or resultant death is by accidental means, even though there is no proof of mishap, mischance, slip or anything out of the ordinary in the act or event which caused such injury or death. Representative of such line of authority, is the New York state case, written by Mr. Justice BENJAMIN CARDOZO, where the insured came to his death as a result of pricking a pimple on his lip, and died from the resultant infection. The court in that case found that the death was effected through accidental means, holding:

"But our point of view in fixing the meaning of this contract, . . . must be that of the average man. . . . Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident. This test—the one that is applied in the common speech of men—is also the test to be applied by courts." [2]

Choosing between the two clearly defined lines of cases on this subject, Wisconsin has elected to follow the "average man test" in defining the word "accident" rejecting the narrower definition that requires an unforeseen event as well as an unanticipated result to constitute an accidental happening. This election between two alternative interpretations was made in the *Wiger Case* where the insured died from carbon monoxide poisoning while he

---

[1] *Reeves v. John Hancock Mutual Life Ins. Co.* (1955), 333 Mass. 314, 316, 130 N. E. 2d 541, 55 A. L. R. 2d 1177.

[2] *Lewis v. Ocean Accident & Guarantee Corp.* (1918), 224 N. Y. 18, 120 N. E. 56, 7 A. L. R. 1129.

was in an enclosed garage with the motor of his car running. Upholding a jury verdict that death was not suicidal and due to accidental causes, this court held:

> "It is our conclusion that the term 'accidental means' must be interpreted according to the usage of the average man. So interpreted we have no doubt that the means of death in this case must be designated as accidental. To eliminate from the definition of 'accidental means' all cases where the injury happened as the natural or foreseeable result of a force or event voluntarily set in motion by the insured may have some scientific justification, but is contrary to the common understanding of the term and tends unfairly to limit such policies to cases where the insured is guilty of no negligence." [3]

Applying the "average man" definition of accident to the facts of this case, it follows that, if the insured's death was solely caused by the lifting of the heavy wagon off the tractor wheel, the cause of death was accidental within the meaning of the policy, it being the direct and unexpected result of the act or incident involved.

*Was the accident the sole cause of death?*

Was the lifting of the wagon the sole cause of the death of the insured? Did death occur as the direct result of such lifting, independent of all other causes?

Defendant-insurance company contends that the insured would not have died if he did not have the physical flaw, unknown to him, that is known as "cystic medionecrosis." This condition, the insurer argues, was a "but-for" cause of death along with the act of lifting the wagon. If the insured's death was caused, even in part, by such preexisting physical condition or weakness, defendant argues it should follow that his death was not caused by the accident "independent of all other causes."

---

[3] *Wiger v. Mutual Life Ins. Co.* (1931), 205 Wis. 95, 236 N. W. 534. This decision was reaffirmed in *O'Connell v. New York Life Ins. Co.* (1936), 220 Wis. 61, 264 N. W. 253.

On this issue of "sole cause" the trial court gave the following instruction:

"You are instructed that a man insured may be suffering from some disease or physical condition that has weakened his resistance, yet he may be the victim of an accident which is the sole cause of his disability, although disability might have been less likely had he been in better physical condition.

"This question calls for a finding of fact as to whether the disability incurred by the insured, Richard J. Stoffel, in the accident, the alleged accident, of December 4th, 1965, resulted solely from the alleged accident, independent of all other causes. In this connection you are instructed that if a disease or bodily condition exists and an accident occurs, to constitute the accidental means the sole cause of the injury, under policies like the one here in suit, it is not necessary that the injuries or the results thereof would have been as severe as they were had the disease or bodily condition not existed; but it is sufficient if the accidental means would have solely caused some considerable injury had the disease or bodily condition not existed. But if no considerable injury at all would have resulted had the insured, Richard J. Stoffel, not been afflicted with the existing disease or condition, the accidental means cannot be considered as the sole cause of the injury."

The trial court's instructions follow the case law in this state and elsewhere that, as in the matter of defining "accident" gives weight to the "reasonable expectations" of the "average man" in interpreting "sole cause" including, for example, the New York state case where the appellate court held:

" 'Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract' . . . A distinction, then, is to be drawn between a morbid or abnormal condition of such quality or degree that in its natural and probable development it may be expected to be a source of mischief, . . . and a condition abnormal or unsound when tested by a standard of perfection, yet so remote in its potential

mischief that common speech would call it not disease or infirmity, but at most a predisposing tendency." [4]

It is clear that Wisconsin has chosen to follow this "reasonable expectations" test of an "average man" test in defining the term "sole cause." This test draws a sharp distinction between the performance of an everyday act, involving ordinary exertion and performable by a normal person without risk or consequence of serious injury, and the doing of an act that, by itself, could solely cause considerable injury to even a normal person performing it. Thus, where a man with a preexisting heart condition, pulled a boat onto shore, an act that would not have resulted in injury under any circumstances except for his preexisting heart condition, this court rejected the jury verdict, denied recovery and said:

"From the undisputed evidence in the instant case it is plain that no considerable injury to the insured would have occurred had he not been afflicted, at the time he sustained the injury to his heart, with the heart condition described." [5]

---

[4] *Silverstein v. Metropolitan Life Ins. Co.* (1930), 254 N. Y. 81, 84, 171 N. E. 914. *See also Mahon v. American Casualty Co.* (1961), 65 N. J. Super. 148, 164, 167 Atl. 2d 191, holding: "Specifically, we will not hold . . . that the mere conjunction of disease or abnormality and accident . . . necessarily bars recovery in a limited coverage case as a matter of law.

"Militating against that result . . . is what we deem the reasonable expectation of the average member of the public buying an accident policy. We think he pays premiums under the assumption that if he sustains an accident which directly subjects him to costly disability he will have indemnity therefor, and not be left empty-handed on the assertion by the company that his accidental injuries are worse than they would otherwise be because of the activation by the accident of a previous physical condition, especially one of which he was unaware and which had not affected him before the accident."

[5] *Herthel v. Time Ins. Co.* (1936), 221 Wis. 208, 214, 265 N. W. 575.

However, in a case where the insured had "certain abnormalities of growth in his spine" this court upheld a jury verdict allowing the insured to recover disability benefits when he slipped on an icy surface and wrenched his back, holding:

". . . we see no reason to disturb the finding of the jury . . . It was the view of the plaintiff's experts that the injury resulted in lumbosacral or sacroiliac strain, and that plaintiff's present symptoms and disability are solely referable to the strain. The import of their testimony must be taken to be that the accident 'would have solely caused some considerable injury' had plaintiff's spine been in a perfectly normal condition." [6]

In keeping with the reasoning and results reached in these two decisions, the trial court correctly gave the jury the guidelines for determining whether the lifting of the heavy wagon was the sole cause of the death of the insured. There remains the question of whether there was credible medical testimony in the record to sustain the verdict reached by the jury. It appears clear that there was.

The testimony of the attending physician, who was present at the autopsy, in pertinent part was as follows:

"*Q.* And on this document (the death certificate) do you have down here what the immediate cause of death was? *A.* Yes, a rupture of the aorta.

"*Q.* That was due to? *A.* Trauma.

"*Q.* That was in turn due to? *A.* Strain, lifting heavy weight."

The hospital pathologist who performed the autopsy testified, in pertinent part, as follows:

"*Q.* Would this rupture in your opinion, doctor, have occurred without the heavy lifting? *A.* I believe the lifting was involved in causing the rupture, yes; I don't

[6] *Egan v. Preferred Accident Ins. Co.* (1936), 223 Wis. 129, 133, 269 N. W. 667. *See also* companion case *Egan v. Travelers Ins. Co.* (1937), 224 Wis. 596, 273 N. W. 68.

think that without the lifting the vessel would have ruptured.

"*Q.* Would the lifting itself have caused considerable damage to this vessel? *A.* It could have.

"*Q.* Do you think it would have happened in this case? *A.* I think it probably did in this case.

"*Q.* Is that your opinion based upon a reasonable medical probability? *A.* Yes."

It is argued by defendant that other testimony in the record would support a finding that the lifting of itself was not the sole cause of the death of the insured. That is not the question before us. The question is only whether there is credible medical evidence to support the finding made. Particularly in the testimony of the attending physician, which the jury was entitled to believe, we find such solid basis for the jury verdict.

We see no reason and find no cause to disturb the jury finding as to the cause of death in this case.

*Was the accident excluded by the policy?*

The preceding paragraphs of this decision lead us to join the trial court and jury in holding the death of the insured to have occurred as "the direct result of bodily injury and independent of all other causes." However, the double indemnity provision before us includes the following qualifying provisions:

". . . effected solely through external, violent and accidental means, as evidenced by a visible contusion or wound on the exterior of the body (except in the case of drowning or internal injuries revealed by an autopsy) . . ."

During oral arguments, but not in the briefs, the question was raised as to whether the phrase "except in the case of drowning or internal injuries revealed by an autopsy" was an exception to the requirement of "evidenced by a visible contusion or wound on the exterior of the body" or whether it is an exception to the whole accidental death coverage provision. Is this an exception

to the exception or an exception to coverage? We think it is clear that reference to drownings and "internal injuries revealed by an autopsy" is an exception only to the phrase immediately preceding it. It is intended that visible contusions or wounds be accepted as evidence of violent death, except in the case of drownings, where ordinarily there would be no bruises or wounds and except in the case of autopsy-certified internal injuries. In practice, the insurance company is insisting that to qualify for double benefits, except in cases of drowning or where there are visible bruises or wounds, there is to be an autopsy. The reason for this insistence is obvious. By definition, internal injuries cannot be seen or observed. Only an autopsy can reveal the exact nature and extent of such internal injuries and their relationship to the fact of death.

The contrary construction or interpretation would lead to the unnatural, almost unbelievable, conclusion that the company was intending to exclude both drowning and internal injuries from coverage under the accidental death provision. Understood in advance, this would do more than disappoint the "reasonable expectations" of an "average person." It would make purchasing the policy and paying premiums for so limited a coverage, unattractive indeed.

If the restriction on deaths due to internal injuries unless "revealed by an autopsy" were considered to be an ambiguity in the policy, a limitation susceptible to more than one interpretation, the rule of construing ambiguities against the insurer would come into play.[7] The

---

[7] In *Inter-Insurance Exchange v. Westchester Fire Ins. Co.* (1964), 25 Wis. 2d 100, 104, 130 N. W. 2d 185, the court stated the following:

"It should also be stated that it is fundamental that no contract of insurance should be rewritten by construction to bind an insurer to a risk which it did not contemplate and for which it was not paid, unless the terms, which after all are under the control of the insurer, are ambiguous or obscure. It is of course the rule

doubt would in such event have to be resolved against the insurer, in favor of coverage. However, here we find the intent clear and proper construction obvious. It should be added that at no time during the trial or in its brief on appeal, did the defendant insurance company or its counsel assert that a loss of life by accidental means due to internal injuries revealed by an autopsy was not covered by the double indemnity provision. It is clear that such a death is so covered.

*By the Court.*—Judgment affirmed.

WILKIE, J. (*dissenting*). This was an unfortunate death made more so by the fact that, in my opinion, it was not covered by the double indemnity provisions of the insurance policy. The qualifying language rules out a death such as happened here. It covers only a death which "shall occur as the direct result of bodily injury and independent of all other causes, effected solely through *external, violent* and *accidental* means, as evidenced by a visible contusion or wound on the exterior of the body (except in the case of drowning or internal injuries revealed by an autopsy), . . . ." (Emphasis added.) The exception clause, according to all accepted rules of syntax and legal construction, modifies only the phrase "a visible contusion or wound on the exterior of the body" even though internal injuries were revealed by an autopsy.

The insurance policy could have covered the death but it did not. We cannot remake the insurance contract.

I am authorized to state that Mr. Chief Justice HALLOWS joins in this dissent.

that in the event of ambiguity or obscurity, the language is to be construed against the insurance company and in favor of the insured. *Lontkowski v. Ignarski* (1959), 6 Wis. 2d 561, 95 N. W. 2d 230." *See also Tri-Motors Sales, Inc. v. Travelers Indemnity Co.* (1963), 19 Wis. 2d 99, 119 N. W. 2d 327; *Britten v. Eau Claire* (1952), 260 Wis. 382, 51 N. W. 2d 30.