**Stanton W. TODD, III, Plaintiff–Appellee, Cross–Appellant,**

**v.**

**CORPORATE LIFE INSURANCE COMPANY, Defendant–Appellant, Cross–Appellee.**

**Nos. 90–3229, 90–3244.**

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1991.

Decided Oct. 7, 1991.

Shari L. Friedman, Alexander D. Kerr, Jr., argued, Tishler & Wald, Chicago, Ill., for plaintiff-appellee.

James R. Carr, argued, Donald V. O'Brien, Chicago, Ill., for defendant-appellant.

Before CUDAHY, EASTERBROOK and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

The dispute at the center of this litigation is not about *why* Stanton Todd was fired by Corporate Life Insurance Co. but about *when.* Todd had a clause in his employment contract allowing him six months written notice prior to termination. Corporate Life believed its correspondence with Todd gave that notice, and so it ceased paying his salary. Apparently the company could have been more direct. Claiming he never got the message, Todd filed suit, and the district court granted his motion for summary judgment on liability. It conducted a bench trial to determine damages. We affirm in part and reverse and remand in part.

I.

Corporate Life, operating out of West Chester, Pennsylvania, endured some hard times during the late 1980s. As part of its effort to turn things around, the company informally employed Todd to consult for it

in marketing out of his home in Northfield, Illinois (a suburb of Chicago) through 1987. Near the end of that year, Martin Vogt, the new president of Corporate Life, decided to formalize that relationship. He and Todd worked out terms of employment, which were then memorialized in a letter signed by both parties, dated January 5, 1988. Those terms were as follows:

1. You will not be an employee of Corporate Life Insurance Company but will continue the present arrangement where you serve on a consulting basis.

2. You will maintain your office in Chicago and the majority of your time will be spent in that office. We will reimburse you for your office expenses up to $40,000 per year.

3. You will receive direct compensation of $10,000 per month which shall be paid on the first of each month.

4. We will reimburse you for the travel expenses you encounter relating to your Corporate Life activities.

5. You will continue to use Corporate Investment's Mercedes 560 SEL. You have an option to purchase that car....

. . . .

7. This arrangement may be terminated by either of us upon six months advance written notice.

Supp.App. at 1–2.

Todd continued working for Corporate Life under these new terms, but several modifications were made as the year passed. In late March, the parties agreed that Todd would receive one-half percent of "all collected premium written on Pre–Need life insurance" during the year. In late June, the parties added more benefits to Todd's contract, along with a raise in salary of $1000 per month and an increase to three-quarters percent of all collected pre-need premium. Both modifications were committed to writing and signed by Vogt and Todd. Vogt accompanied each modification with effusive praise for Todd's work and his contributions to Corporate Life's recovery.

As early as May, the company experienced a change of heart, and began seeking a new relationship with Todd. Corporate Life was expanding its insurance markets, and with them its marketing needs. Vogt wanted Todd to close his Illinois office and move to Pennsylvania as a full employee of the company, a move Todd resisted. Discussions ensued, and whatever their result, Vogt sent Todd the following memorandum on October 28, 1988:

This will confirm the information covered during our telephone conversation of October 24, 1988 relating to our reimbursement of your office expense.

... As a result of the items you covered during our telephone conversation, I have agreed to increase [the $40,000 reimbursement] figure for 1988 to $49,-200.00. For the first six months of 1989 the figure will be set at $25,000.00. Since you will be located in West Chester starting in July of 1989, we are not providing for any office expenses beyond June of 1989.

Supp.App. at 3. Unlike any of the prior memoranda modifying the employment agreement, this one was signed only by Vogt, with no signature line for Todd. Todd's succinct response followed quickly on November 2:

As you know, I fear the economic well being of Corporate. My move to West Chester must be discussed next January after we know the general attitude of the powers that be....

The monthly office expenses will end as we agreed, only given my moving to West Chester, but not until that time.

*Id.* at 21.

Todd's fear of upheaval at Corporate Life was well founded. Vogt was replaced as president of the company by Bert Kendro in November. By December, Kendro had already been ousted in favor of Aloysius Abel. It was Abel who wrote the second critical letter to Todd on December 29.

The purpose of this letter is to review your present and future relationship with Corporate Life.

It is my understanding that your new relationship with Corporate Life will be

that of President of Corporate Investment Services Company.... This new relationship will replace all existing working relationships with Corporate Life.

Tony, as you know from our telephone conversation you promised to send the documentation related to your prior working relationships to me by Tuesday, January 3.

*Id.* at 22. Todd and Abel apparently maintained a stormy relationship for the next several months. Abel forwarded a proposed employment contract to Todd in late January; Todd brought his own proposal to a February 1 meeting. The two reached an impasse, and no further negotiations occurred.

Meanwhile, unbeknownst to Todd, Abel appointed Bill Moyer head of Corporate Life's marketing division. On April 27, Todd received his pink slip from Abel in no uncertain terms:

It has been brought to my attention that you may be laboring under the misconception that your services as a Consultant to Corporate Life Insurance Company will be utilized after June 30, 1989. I hope this is not the situation.

As you know from correspondence and meetings with you as far back as the latter part of 1988 we reviewed with you the change in your status with Corporate Life.

*Id.* at 5. Todd received his last paycheck on June 22, 1989 with the words "Final Payment" written on it. He did not cash this check. Instead he filed suit in federal court, basing jurisdiction on diversity, 28 U.S.C. § 1332 (1988).

The district court, applying Illinois law, determined that advance written notice of termination required a "clear and unequivocal" statement to that effect. On Todd's motion for summary judgment, it ruled that the notice provided by the October and December letters to Todd was insufficient to meet this standard. With the merits thus decided, the district court conducted a trial on the damages Todd sustained by the premature termination. It found that Todd was owed five months salary, automobile expense reimbursement and $1500 in pre-need premium. However, the district court understood the October 28 letter to cut off office expense reimbursements in June 1989 at $25,000, and it determined that Corporate Life had not breached that agreement.

Both parties have appealed the decision below. Corporate Life raises two arguments on appeal. Its more general argument is that the district court erred by granting summary judgment for Todd on the question of liability. Corporate Life also complains of the district court's evidentiary rulings with respect to its attempt to prove Todd's failure to mitigate damages. Todd charges errors with respect to the district court's determination of damages: first, the October 28 letter could not have unilaterally modified the contract by denying Todd expense reimbursements after June 30, 1989; second, even were the $25,000 expense cap applicable, the district court erred in calculating the amount of expenses reimbursed under that cap; third, Todd deserves an award of prejudgment interest under Illinois law.

II.

Although facially distinct, both parties' central arguments are actually closely aligned. We will thus approach the two arguments together, mindful that our standard of review changes from one claim to the other. We review issues decided on summary judgment *de novo*, resolving all reasonable inferences in favor of the non-moving party. *New Burnham Prairie Homes, Inc. v. Burnham*, 910 F.2d 1474, 1477 (7th Cir.1990). Reviewing the district court's determinations after trial, however, even those that involve computing damages, we scrutinize legal rulings *de novo* but look only for clear error in factual determinations. *Nohcra Communications, Inc. v. AM Communications, Inc.*, 909 F.2d 1007, 1010 (7th Cir.1990).

Both parties complain that the district court gave the wrong effect to the October 28 letter: Corporate Life, because that letter should be read to terminate the entire January 5 agreement, and Todd, because

that letter should be read to have no effect on the employment relationship. For support, both sides are able to point to the district court's conclusion in their favor with respect to the other determination. If the October 28 letter terminated the expense reimbursement, Corporate Life posits, then it terminated the overall "arrangement" the parties had established: allowing Todd to consult for Corporate Life from his Northfield home. Turning that argument around, Todd objects that if the October 28 letter did not terminate the relationship, it could have no effect whatsoever without his acquiescence. The irony of these juxtaposed arguments illustrates what we believe might be an internal inconsistency in the outcome below.

■ In its opinion on damages, the district court held that "On October 28, 1988, Vogt modified the January 5 agreement by increasing Todd's office expense reimbursement [for 1989] to ... $25,000 until July...." Findings of Fact and Conclusions of Law, at 3, ¶ 7 (July 2, 1990). Further, "Vogt's October 28 notice was sufficient written notice by Corporate Life to terminate the agreement to reimburse Todd's office expenses effective June 30, 1989." *Id.*, ¶ 8. Given the district court's prior conclusion that the same letter did not terminate the parties' relationship, we think this finding cannot stand. Todd and Corporate Life shared a written contract with specific provisions for compensation and reimbursement. That contract could not be modified unilaterally. The parties themselves recognized this in their earlier modifications, each of which had been signed by both Corporate Life's president and Todd. Corporate Life was not free to alter the terms of the January agreement at will. *Scutt v. La Salle County Bd.*, 97 Ill.App.3d 181, 185, 53 Ill.Dec. 21, 24–25, 423 N.E.2d 213, 216–17 (1981); *Brooks v. Village of Wilmette*, 72 Ill.App.3d 753, 756, 28 Ill.Dec. 934, 937, 391 N.E.2d 133, 136 (1979).

■ We return, then, to the district court's prior determination, namely whether the October 28 letter terminated the agreement. That letter was anything but direct in addressing the relationship as a whole. While it clearly sets the reimbursement cap for 1988 at $49,200 and states that expenses for 1989 will be restricted to $25,000 and only through June 30, the letter says nothing explicitly with respect to the overall relationship. It appears Todd would be doing the same work, but doing it in West Chester rather than Northfield. The parties had modified the agreement before; this letter appears merely to represent yet another attempt to do so. The district court's statement of the standard governing advance written terminations—that the notification must be "clear and unequivocal"—is not challenged on appeal. Under that standard, we agree that the October 28 letter did not unequivocally terminate the parties' relationship.[1]

■ What, then, was the effect of Vogt's letter? Although it cannot have unilaterally modified the January agreement, it might simply represent the written confirmation of an oral agreement reached by the parties in their earlier negotiations. Oral modifications are allowed in service contracts in Illinois, *see Park v. Dealers Transit, Inc.*, 596 F.2d 203, 204–5 & n. 1 (7th Cir.1979), and the October 28 letter appears to refer to just such an oral agreement for a change in reimbursement policy. On the other hand, Todd's response of November 2 might militate against such a determination. Nevertheless, the decision of the district court is not sustainable on its present analysis. The agreement between Todd and Corporate Life, as stated in the January 5 letter and evidenced in the parties' dealings during the first half of 1988, allowed for six months unilateral notice of termination, not six months unilateral notice of modification.

If the letter was in fact merely a failed attempt to modify the January agreement,

---

**1.** If this demanding standard of clarity did not apply, the October 28 letter might be construed as a notice of termination coupled with a conditional offer to modify the terms of the agreement. *See R.S. & V. Co. v. Atlas Van Lines, Inc.*, 917 F.2d 348, 352 (7th Cir.1990). But the demanding language in the agreement of the parties forecloses this interpretation.

the district court's ruling that expenses would not be reimbursed above $25,000 or beyond June 30, 1989 cannot stand. Todd argues that the real effect of the parties' agreement was a new rate for yearly office expenses of $50,000. We think this position, too, misinterprets the impact of the October 28 letter. The agreed increase of 1988 expenses to $49,200 appears to have been a one-time increase. While Vogt's concession of $25,000 for the first half of 1989 could be read as envisioning a $50,000 per year rate, there are countervailing considerations. Corporate Life was an ailing insurance company about to lose its second and third presidents in little more than a year. While Todd apparently persuaded the company to increase his office expenses for 1989 as well as 1988, that increase may have been offered strictly with the expectation that Todd would incur expenses only for a half year. Todd's reluctance to commit to West Chester would have likely brought a reconsideration of the increase. Because the record before us reveals no agreement with respect to expenses for all of 1989, the original $40,000 cap apparently remains intact. We must therefore remand to the district court for a determination of damages in accordance with our analysis in this opinion. *Cf. Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557, 559 (7th Cir.1985) (need for trial on damages after remand may not be required).

▆ Corporate Life's second point on appeal questions the rulings of the district court with respect to evidence of mitigation of damages. The district court restricted the defendant's cross-examination of Todd, sustaining objections to questions regarding Todd's 1989 tax return, his overall income in 1988 and 1989 and his working status at the time of trial. While answers to these questions might indeed have been probative of Corporate Life's claim that Todd failed to mitigate damages, the company had long since waived the right to raise them. Discovery closed and the final pretrial order was issued three weeks before the trial date. At that time, Corporate Life indicated it needed none of this financial information as exhibits at trial, nor did

it list Todd's accountant as a witness. The only contested issue of fact noted in the order was whether "Todd attempted to mitigate his damages by engaging in activity in furtherance of his business from July 1989 through October 1989." Final Pretrial Order at 7 (June 7, 1990). Apparently someone realized the mistake only days before trial, and attempted to subpoena both Todd's accountant and his financial records. The district court quashed that subpoena. Tr. at 4 (June 28, 1990). It also quashed a second subpoena attempt, served at Mr. Todd's residence the night before trial. Tr. at 7 (June 29, 1990).

Thus rebuffed, defendant tried to recover by inquiring of Todd on cross-examination with respect to his financial situation. The district court allowed any questions regarding Todd's recollection of his earnings and expenses between July and October 1989—these were within the scope of the pretrial order. But the court refused to allow questions regarding Todd's tax return or his financial situation outside that four month period. The time to raise these issues was before the final pretrial order, not on the eve of trial or in the midst of the proceedings. Thus placed in context, these exclusions did not constitute an abuse of the district court's discretion, *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1283 (7th Cir.1989) (citing *Sadowski v. Bombardier Ltd.*, 539 F.2d 615, 618 (7th Cir.1976)), and we decline to overturn them on appeal.

Todd presses several other arguments on appeal as well, centering around the district court's calculation of damages. Though these matters will be reconsidered by the district court on remand, we believe it efficient where possible to resolve the disputes at this time. First, Todd supports quite convincingly his claim that, in determining which 1989 expenses were already reimbursed at the time of termination, the district court ignored the fact that several 1989 payments were issued for 1988 expenses. In its brief, Corporate Life belittles this argument as "hypertechnical," Appellant's Reply Br. at 15, but at oral argument counsel for Corporate Life could not muster a defense for the district court's computation. We therefore request that

the district court, on remand, carefully scrutinize the 1989 reimbursements already received, sifting out those payments that should be allocated to 1988 expenses. As for the reimbursement of automobile expenses and travel expenses, we leave these calculations to the district court. In its order after trial, the district court clearly stated that automobile expenses were separately recoverable, and we assume (because the January agreement treats the two almost identically) that the same result applies to travel expenses. The district court specifically found against Todd on the issue of health insurance, holding as a factual matter that, whatever the history of health care payments between the two parties, no agreement obligated Corporate Life to cover Todd's health insurance. Findings of Fact and Conclusions of Law at 4, ¶ 13 (July 2, 1990). Nothing in the record persuades us to reverse this finding.

■ Finally, Todd seeks prejudgment interest on his award before us. He concedes, however, that he failed to argue for this below, Appellee's Reply Br. at 7; so the issue is waived on appeal. *See Publishers Resource*, 762 F.2d at 561 & n. 2. The district court's decision to grant summary judgment for Todd on liability is AFFIRMED. Its determination of damages is VACATED AND REMANDED for reconsideration in light of this opinion.