Barbara McFARLANE, Plaintiff–Appellant,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant–Appellee.

No. 92–3729.

United States Court of Appeals, Seventh Circuit.

Argued May 6, 1993.

Decided July 19, 1993.

John F. Winters, Jr., William R. Power, Debra K. Marcus (argued), Pappas, Power & Marcus, Chicago, IL, for plaintiff-appellant.

William E. Hoversen, Jr. (argued), Modesto, Reynolds & McDermott, Chicago, IL, for defendant-appellee.

Before POSNER, FLAUM, and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

Morgan McFarlane had heart trouble. He suffered a fatal heart attack in the wee hours of January 1, 1990, while investigating a break-in at Kennedy High School in Chicago, where he worked as a security guard. According to Police Officer David Rimkus, he received a call at around 3:00 a.m. to investigate the break-in at Kennedy High. McFarlane met Rimkus and his partner at the front door when they arrived approximately ten minutes later. McFarlane, who had already searched an adjacent grade school building and had begun searching the high school, thought the burglar might still be on the premises and appeared to be apprehensive. All three began their search on the first floor; Officer Rimkus and McFarlane climbed the stairs to the second floor, and after searching that floor, proceeded up another flight of stairs to the third floor. Their survey of the school building revealed a great deal of vandalism, including gang graffiti and destruction of property, the most extensive being in the home economics room and in the principal's office.

During the course of this search, Officer Rimkus observed that McFarlane was visibly upset and breathing heavily. When McFarlane opened the door to a storage closet on the third floor, he shouted that he had found something. As Officer Rimkus, who was standing a few feet away, turned toward him, McFarlane dropped a pair of bolt cutters he had spotted in the closet, clutched his chest, and keeled over. Although the paramedics arrived on the scene within a few minutes, their efforts to revive McFarlane failed.

At the time of his death, McFarlane was 50 years old, stood approximately six feet tall, and weighed between 325 and 350 pounds. The Cook County Medical Examiner listed the cause of death as arteriosclerotic cardiovascular disease with obesity as a contributing factor. According to McFarlane's medical history, his family had a history of heart disease; and four of his brothers died suddenly, apparently of heart attacks. At least one medical record described McFarlane as "morbidly obese"—although his medical expert disputed that characterization since McFarlane's weight did not interfere with his daily routine. McFarlane also suffered from diabetes and hypertension, and he took various medications to control his heart rate. In addition, he successfully underwent cardiac surgery in 1983 to repair an atrial septal defect (a congenital opening between the two sides of the heart). McFarlane did nonetheless exhibit mild to moderate left ventricular hypertrophy and pulmonary heart disease as a result of the atrial septal defect.

Life Insurance Company of North America ("the Insurance Company") had issued an insurance policy with $70,000 coverage for accidental injury or death to McFarlane prior to his demise. When McFarlane's wife attempted to collect the benefits under the policy, the Insurance Company denied her request on the grounds that his death was not accidental but due to an underlying heart condition. Although the suit Mrs. McFarlane brought in the district court was initially dismissed for failure to prosecute, both sides agreed to reinstate it voluntarily and try it before a magistrate judge. At the conclusion of the trial, the magistrate ruled in favor of the Insurance Company.

■ While McFarlane's brief is silent on the standard of review, the Insurance Company asserts that we scrutinize the magistrate judge's legal conclusions *de novo* while we look for clear error in its findings of fact. *Todd v. Corporate Life Ins. Co.*, 945 F.2d 204, 207 (7th Cir.1991). This proposition is true as far as it goes: this court does subject pure questions of law to *de novo* review. In the present case, however, we are examining not an unadulterated legal conclusion, but rather an application of a legal standard to a particular set of facts. The corresponding review is for clear error. *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1269–70 (7th Cir.1991). Only if the trial judge misapprehends the governing rule of law does our review become more searching. *Bose Corp.*

*v. Consumers Union,* 466 U.S. 485, 501, 104 S.Ct. 1949, 1960, 80 L.Ed.2d 502 (1984).

■ Mrs. McFarlane does not challenge any of the factual findings by the magistrate judge; indeed, many of them appear to favor her cause. She questions only the magistrate's application of Wisconsin law (which governs in this case) to those facts. Under the relevant law, Wisconsin applies a fairly mechanical three-part analysis to determine whether an incident resulting in death is an accident that entitles the beneficiary to accidental death benefits under the insurance policy. *See Stoffel v. American Family Life Ins. Co.,* 41 Wis.2d 565, 164 N.W.2d 484 (1969). The first stage of the inquiry focuses on whether the event is an accident. The second step is to establish whether the accident was the sole cause of death. Finally, the court reviews the policy to determine whether it precludes recovery.[1]

The Wisconsin Supreme Court employs an "average man test" to determine whether a death is accidental. *Wiger v. Mutual Life Ins. Co.,* 205 Wis. 95, 236 N.W. 534 (1931). In *Wiger,* the insured died from carbon monoxide poisoning while he was in his garage with the motor of his car running. Upholding a jury verdict that the death was accidental, the court explained:

> It is our conclusion that the term "accidental means" must be interpreted according to the usage of the average man.... To eliminate from the definition of "accidental means" all cases where the injury happened as the natural or foreseeable result of a force or event voluntarily set in motion by the insured may have some scientific justification, but is contrary to the common understanding of the term and tends unfairly to limit such policies to cases where the insured is guilty of no negligence.

*Id.* 236 N.W. at 538–39. In other words Wisconsin has rejected a narrower definition of accident that would call for both an unforeseen event and an unanticipated result, and requires only the latter. On the present facts, the magistrate judge concluded that McFarlane's heart attack was an "accident," at least for analytical purposes, resulting directly from the break-in and accompanying stress of searching for the culprits. Neither side has disputed this characterization.

■ The only point of contention between the parties concerns whether the circumstances surrounding McFarlane's death constituted its "sole cause." Sole cause may be something of a misnomer since it actually serves to distinguish, according to a reasonableness standard, those acts whose performance poses no risk of serious injury from those that could cause considerable injury, even to someone in good health. The jury instruction endorsed by the Wisconsin Supreme Court to this end reads:

> [I]f a disease or bodily condition exists and an accident occurs, to constitute the accidental means the sole cause of the injury, ... it is not necessary that the injuries or the results thereof would have been as severe as they were had the disease or bodily condition not existed; but it is sufficient if the accidental means would have solely caused some considerable injury had the disease or bodily condition not existed.

*Stoffel,* 164 N.W.2d at 488. In *Stoffel,* the decedent (Stoffel) collapsed and died of a massive hemorrhage from a ruptured aorta while lifting a farm wagon. Stoffel, who was 21 and in apparent good health at the time of his death, actually had a heart condition that contributed to the rupture. A jury concluded that the act of lifting was the sole cause of his death and found for Stoffel. On appeal the Wisconsin Supreme Court concluded that Stoffel had offered credible medical testimony supporting the favorable jury verdict. *Id.* at 490; *see also Graves v. Travelers Ins. Co.,* 66 Wis.2d 124, 224 N.W.2d 398, 404–05 (1974) (medical evidence sufficient to support jury verdict for plaintiff-beneficiary).

Mrs. McFarlane reads *Stoffel* to require that a plaintiff show only that the activity "could have" caused considerable injury to a healthy individual and attempts to make much of this apparent standard. She directs

---

1. Neither McFarlane's policy nor the amendatory rider to it is at issue. Ostensibly designed to limit the insurer's exposure, the language of such amendatory riders has been construed by Wisconsin courts as requiring that the accident be the sole cause of death. *Stoffel,* 164 N.W.2d at 491; *Graves v. Travelers Ins. Co.,* 66 Wis.2d 124, 224 N.W.2d 398, 404 (1974).

our attention to the testimony of Dr. Richard Cooper, a cardiologist and her expert witness. Dr. Cooper concluded that a person without McFarlane's underlying physical and health problems (which we take to be an "average man") could have suffered a non-fatal heart attack under the circumstances that surrounded his death. Indeed, the line of questioning employed by McFarlane's attorney in the examination of Dr. Cooper closely tracked that of counsel in *Stoffel*. Mrs. McFarlane contends that the magistrate judge erred by holding her to a higher burden inasmuch as the judge concluded Mrs. McFarlane did not prove by a preponderance of the evidence that McFarlane would have sustained an injury that night had he not suffered from a preexisting heart condition. The distinction lies in the difference between "could" and "would." Whereas "could" refers to some probability of an indeterminate size, "would" conveys something closely akin to more likely than not. In other words, the magistrate judge concluded, based on all the evidence presented, that Mrs. McFarlane did not establish that it was more likely than not that McFarlane would have sustained some serious injury absent his heart condition. This reasoning is consistent with Wisconsin law.

As the factfinder, the magistrate judge might have arrived at the same outcome even if Dr. Cooper had asserted that some healthy individual in McFarlane's shoes *would* have suffered a non-fatal heart attack that night. *Cf. Graves*, 224 N.W.2d at 404–05. He didn't. And even though he testified that a serious injury, namely a non-fatal heart attack, was within the realm of possibility, the magistrate judge could and did view all the evidence otherwise. McFarlane exhibited a number of factors associated with high incidence of heart attacks. Dr. Cooper himself testified that obesity, diabetes, hypertension, family history, and ventricular hypertrophy all constituted independent risk factors for heart attacks. Regardless of what Dr. Cooper maintained could have happened, the magistrate judge was within her rights to credit or discount evidence she heard. Noth-

ing in this conclusion by the magistrate judge—that the accident did not constitute the sole cause of McFarlane's death—manifests clear error.[2]

AFFIRMED.

---

2. Mrs. McFarlane's counsel conceded at oral argument that if we affirmed the magistrate judge on the question of coverage, we would have no occasion to entertain her contention that the Insurance Company acted in bad faith in denying Mrs. McFarlane accidental death benefits.