4 F.3d 997
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Henry NOLEN, Jr., Plaintiff-Appellant,
v.
DINING CAR EMPLOYEES, LOCAL NO. 43, and Amtrak Service
Workers Council, Defendants-Appellees.
 No. 92-1835.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 3, 1993.
Decided Sept. 14, 1993.
As Corrected Sept. 24, 1993.
 
 Before BAUER, Chief Judge, and POSNER and MANION, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff Henry Nolen, Jr. brought a hybrid breach of contract/duty of fair representation action ("DFR") against his employer and union. Nolen obtained a default judgment against the union and settled with his employer. Nolen appeals from the district court's decision that he could not collect from his union his reasonable attorneys' fees that he incurred in pursuing his breach of contract claim against his employer.*
 
 I. Facts
 
 2
 Nolen was employed by the National Railroad Passenger Corporation ("Amtrak"), which is a carrier covered by the Railway Labor Act ("RLA"), 45 U.S.C. Secs. 151-188. Defendants Dining Car Employees Local No. 43 and Amtrak Service Workers Council (collectively "union") are the certified bargaining representatives for certain Amtrak employees such as Nolen. On July 31, 1985, Nolen filed a three-count complaint against Amtrak and the union based upon his wrongful discharge on April 13, 1984. The three counts of the complaint alleged that Amtrak discharged Nolen in violation of the collective bargaining agreement; that the union breached its duty of fair representation; and that the union and Amtrak conspired to deprive Nolen of his right to fair representation, to cause Amtrak to prevail at all appeals, and to deprive Nolen of all backpay and fringe benefits between his discharge date and date of re-employment. On December 12, 1985, Nolen amended his complaint to add two counts alleging employment discrimination by Amtrak in violation of Title VII, 42 U.S.C. Sec. 2000e-2(a)(1), and 42 U.S.C. Sec. 1981. Nolen was reinstated and resumed working for Amtrak in April 1985, while the lawsuit continued.
 
 
 3
 On March 4, 1987, the district court entered an order of default against the union and sanctioned it for failing to comply with discovery requests. The union never challenged the default finding. The litigation against Amtrak continued. The plaintiff eventually settled his case against Amtrak. Nolen thereafter moved to dismiss his suit against Amtrak with prejudice and for a default judgment against the union. The court granted both of Nolen's motions on July 22, 1988, and set a hearing for a prove-up of damages on the default judgment.
 
 
 4
 Nolen's pleadings relating to the prove-up alleged that the union was liable for all of his damages because the union had conspired with Amtrak to injure him as alleged in the complaint. Nolen asserted that he was entitled to two types of damages that ensured from the union's breach of its duty of fair representation and its conspiracy with Amtrak: (1) his nonlitigation damages (i.e., lost wages and benefits), and (2) his litigation damages (i.e., attorneys' fees and other expenses from the district court litigation). Nolen submitted memoranda and affidavits supporting his claim to both categories of consequential damages.
 
 
 5
 The district court entered judgment in favor of Nolen and against the union in the full amount of the requested nonlitigation damages plus post-judgment interest on November 18, 1988. R. 211. The district court referred the remaining requests for attorneys' fees to a magistrate judge. The court's order referring the case to the magistrate judge, however, specifically excluded from the referral "fees for legal work performed which relates to defendant National Railroad Passenger Corporation ('Amtrak')." R. 215. In response to the referral order and the judgment, Nolen filed a "motion to clarify." R. 217. Nolen's motion essentially requested that the district court (1) amend its judgment to award costs, and (2) amend its referral order to allow the magistrate judge to determine legal fees against the union for work performed against Amtrak ("Amtrak litigation fees"). The district court responded to Nolen's motion with a minute order stating: "The order referring this case to the Magistrate stands." R. 216. The court, however, did amend its judgment awarding nonlitigation damages to include costs. While the court's unaltered referral order precluded the magistrate judge from evaluating the Amtrak litigation fees, the court did not indicate whether Nolen was barred from eventually obtaining such an award.
 
 
 6
 Nolen supplemented and amended his fee application for consideration by the magistrate judge. Nolen persisted in his claim that the union's misconduct caused him to incur litigation damages in his suit against Amtrak. The magistrate judge issued her first report and recommendation on October 5, 1990. The magistrate judge recommended an award of attorneys' fees and costs of $21,903.46 for "legal work against Unions." Nolen objected to the recommendation reiterating his claim that the union should be compelled to reimburse him for the Amtrak litigation fees. The district court referred Nolen's objections to the magistrate judge.
 
 
 7
 In December 1991, the magistrate judge issued a second report and recommendation in which she increased the amount of attorneys' fees and costs against the union, but again refused to award attorneys' fees for work done in prosecuting the case against Amtrak. The magistrate judge never directly addressed the issue of the propriety of recovery of attorneys' fees for litigating the claims against Amtrak.
 
 
 8
 In January 1992, Nolen filed objections to the second report and recommendation. Among Nolen's objections was his assertion that the award obtained from the union should include the Amtrak litigation fees. The district court sustained some of Nolen's objections affecting the size of the fee awarded, but rejected his claim of entitlement to fees incurred litigating against Amtrak. In a motion to clarify filed after the district court issued its order but prior to judgment, Nolen made a final attempt to convince the district court that he was entitled to obtain the Amtrak litigation fees from the union. The district court subsequently increased its prior award by $614.70 after considering additional exhibits, but the court once again refused to award Nolen the Amtrak litigation fees. In denying additional fees, the court mischaracterized the request as one for attorneys' fees generated in litigating against the union rather than against Amtrak. The court thereafter entered judgment and Nolen filed a timely appeal.
 
 II. Analysis
 
 9
 Nolen challenges the district court's refusal to award attorneys' fees for the litigation against Amtrak. The sole reason offered by the district court for its refusal to award the Amtrak fees was that the court believed it was prohibited by law from awarding such fees. Nolen alleges that the district court overlooked the legal basis for the union's liability for Amtrak litigation fees: the union's breach of its duty of fair representation compelled Nolen to incur attorneys' fees in pursuing his breach of contract claim against Amtrak. Absent the union's wrongful refusal to provide representation, Nolen argues, he would not have had to obtain substitute representation from his attorneys.
 
 
 10
 Nolen alleges that Bennett v. Local Union No. 66, 958 F.2d 1429 (7th Cir.1992), which was decided less than two weeks after the district court entered a final judgment in this case, establishes that the union is responsible for attorneys' fees spent on the case against the employer where the employer and union collude in acting wrongfully. Based on the allegations in the complaint relating to liability that the union admitted upon the unchallenged entry of a default judgment, see Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir.1983), Nolen alleges that all of the requisites for imposing an award for attorneys' fees under Bennett have been satisfied. We review the district court's legal rulings de novo. Todd v. Corporate Life Ins. Co., 945 F.2d 204, 207 (7th Cir.1991).
 
 
 11
 As this court noted in Bennett, "[t]he general rule in hybrid section 301 cases, as stated in Vaca, 386 U.S. at 197, 87 S.Ct. at 920, and Bowen v. United States Postal Serv., 459 U.S. 212, 230, 103 S.Ct. 588, 599 ... (1983), is that damages should be apportioned." Bennett, 958 F.2d at 1440. The Supreme Court suggested in Vaca and Bowen, however, that apportionment of damages in hybrid breach of contract/DFR cases is not proper where the union or the employer participates in the other's breach. See Bowen, 459 U.S. at 223 n. 11 (In discussing usual allocation of damages in Sec. 301 action, the Court observed "that this is not a situation in which either the union or the employer has participated in the other's breach."); Vaca, 386 U.S. at 197 n. 18 ("Since the Union played no part in Swift's alleged breach of contract and since Swift took no part in the Union's alleged breach of duty, joint liability for either wrong would be unwarranted."). In Bennett, we joined the Sixth and Second Circuits in holding that "joint and several liability is appropriate when the union or the employer has participated in or caused the other's breach." Bennett, 958 F.2d at 1440 (citing Baskin v. Hawley, 807 F.2d 1120, 1132-33 (2d Cir.1986); Allen v. Allied Plant Maintenance Co. of Tennessee, 881 F.2d 291, 298-99 (6th Cir.1989)).
 
 
 12
 The default judgment against the union was entered on a complaint alleging that (1) Amtrak's firing of Nolen and his resulting loss of pay and benefits violated the collective bargaining contract between Amtrak and the union; (2) the union breached its duty to fairly represent Nolen in pressing the collective bargaining grievance over his firing and deprivation of wages and fringe benefits; and (3) Amtrak and the unions conspired to deprive Nolen of, among other things, the pay and fringe benefits he lost during his eleven-month wrongful termination. The well-pleaded allegations in the complaint establish that the union and employer colluded in acting wrongfully.[1] See Dundee Cement Co., 722 F.2d at 1323 ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true."); see also FMC Corp. v. Varonos, 892 F.2d 1308, 1310 (7th Cir.1990). Furthermore, the union has never challenged the facts established by the default by requesting that the court set aside the entry of default or default judgment under Rules 59(c) or 60(b) of the Federal Rules of Civil Procedure. In Bennett, we held that such collusion nullifies the rationale behind apportionment of damages, and that it was "no longer 'unjust' to hold either [the employer or the union] accountable for the entire period of injury." Bennett, 958 F.2d at 1440.
 
 
 13
 The district court obviously found that the facts established by the default judgment were sufficient to justify joint and several liability as to nonlitigation damages, because it held the union defendants jointly and severally liable for the entire amount of Nolen's backpay, prejudgment interest, and job search expenses. R. 219. The district court never explained why it believed that the union was responsible for one component of Nolen's consequential damages, backpay, but not the other component, fees incurred in hiring attorneys to represent Nolen when the union breached its duty to do so.
 
 
 14
 As we noted in Bennett, an employer's breach of its labor contract combined with a union's breach of its duty of fair representation entitles the worker to recover as compensatory damages "not only backpay, but also attorney's fees reasonably incurred to press the claim against the employer." Bennett, 958 F.2d at 1439. Because attorneys' fees are regarded as normal consequential damages in hybrid breach of contract/DFR cases, the general allocation rule set forth in Vaca and Bowen applies to the damages as a whole without distinction between attorney's fees and backpay. See Bennett, 958 F.2d at 1440-41 (discussing applicability of allocation rule to damages comprised of attorney's fees and backpay); Allen, 881 F.2d at 298-99 (same).
 
 
 15
 By holding the union responsible for the entire amount of Nolen's nonlitigation expenses, the district court recognized that the default judgment established that the union and the employer colluded in each other's breach. This complicity precluded the union from benefitting from the allocation rule set forth in Vaca and Bowen. Because Amtrak was dismissed from the case, the union is liable for all of Nolen's damages, but has the corresponding right to sue Amtrak, if it wishes, for contribution. See Stifle v. Marathon Petroleum Co., 876 F.2d 552, 556 (7th Cir.1989); Pasco Int'l Ltd. v. Stenograph Corp., 637 F.2d 496, 503 (7th Cir.1980). The district court implicitly found that the union's active participation in the employer's breach meant that it was accountable for the entire period of injury, and therefore had to pay Nolen all of his backpay. Because attorneys' fees incurred in litigating against Amtrak are part of the consequential damages arising from the same breach, the court logically should have held the union responsible for this portion of Nolen's attorney's fees as well.
 
 
 16
 Of course, the district court did not have the benefit of our holding in Bennett that attorney's fees generated by an employer's and union's collusion in breaching duties owed to the worker are properly included in an award of consequential damages, and that such damages are not subject to allocation. The unchallenged facts in the complaint relating to the union's liability demonstrate that the union's conspiracy with the employer warranted holding the union responsible for all of the consequential damages following its breach of its duty. The district court recognized the import of the facts established by the default judgment when it required the union to pay all of Nolen's nonlitigation damages. Nonetheless, the court erroneously concluded that it also could not order the union to pay Nolen his attorneys' fees incurred in litigating against Amtrak as consequential damages.[2]
 
 III. Conclusion
 
 17
 The district court's judgment is REVERSED and REMANDED for a determination of Nolen's reasonable attorneys' fees incurred in the Amtrak litigation. The district court is directed to add the amount of Nolen's reasonable attorneys' incurred in the Amtrak litigation to the sum awarded in the March 10, 1992, judgment.
 
 
 
 *
 The union appellee did not file a brief on appeal nor did it respond to this court's show cause order as to why it should not be denied oral argument. On April 14, 1993, this court ordered that the union was precluded from oral argument under Circuit Rule 31(d)
 
 
 [1]
 We note that the district court probably did not have subject matter jurisdiction over Nolen's state law conspiracy claim. Such a claim is in all likelihood preempted by the Railway Labor Act, 45 U.S.C. Sec. 151 et seq. See Underwood v. Venango River Corp., 995 F.2d 677, 682, (7th Cir.1993) (holding that RLA preempted RICO claims after noting that RLA preemption is broader in scope than preemption provisions under Labor Management Relations Act, 29 U.S.C. Sec. 185(a), or National Labor Relations Act, 29 U.S.C. Sec. 158); Deford v. Soo Line R. Co., 867 F.2d 1080, 1084-86 (8th Cir.) (holding that RLA preempted state law claims for fraud, conspiracy, and tortious interference with creditor's rights), cert. denied, 492 U.S. 927 (1989). We need not resolve the preemption issue, however, because the allegation of collusion between the union and Amtrak to deprive Nolen of his rights also relates to the union's liability for breach of its duty of fair representation
 
 
 [2]
 Nolen also surmised that the district court's exclusion of Amtrak litigation fees from the damages that the union was deemed accountable for was based upon a factual error rather than a mistaken view of the law. Nolen's discussion of these straw arguments indicates that a mistake of fact was not the basis for the district court's refusal to award the Amtrak litigation fees. In its original order referring the case to a magistrate judge, the court expressly precluded the magistrate judge from considering any award of Amtrak litigation fees, suggesting that the court believed that the union could not be liable for such fees. The court reiterated that such fees were not to be considered in its terse response to Nolen's motion to clarify the referral order. The magistrate judge's subsequent refusal to reach the issue is understandable. The district court's order addressing Nolen's objections to the magistrate judge's second report and recommendation complained that "the time charge exhibits do not differentiate between work performed and related to the Amtrak litigation, for which Nolen is not entitled to his attorney's fees, and work ... related to the prove up of damages against the Unions, for which Nolen is entitled to his attorney's fees." R. 263, at 6. The basis for the district court's refusal to allow consideration of Amtrak litigation fees was clearly a legal error, rather than a factual mistake